UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| **ATLAS STAINLESS CORPORATION PRIVATE LIMITED,** | |
| Plaintiff, | |
| **LAXCON STEELS LIMITED, MEGA STEELS PRIVATE LIMITED, METLAX INTERNATIONAL PRIVATE LIMITED, OCEAN STEELS PRIVATE LIMITED, AND PARVATI PRIVATE LIMITED,** | **Consol. Court No. 26-02192** |
| Consolidated-Plaintiffs, | |
| **MELTROLL ENGINEERING PVT. LTD.,** | This Document Confidential Business Information on Pages 4, 5, 14, 15, 16, 19-23, 25-29, 31, 32, 39 Has Been Deleted. |
| Plaintiff-Intervenor, | |
| v. | |
| **UNITED STATES,** | **NON-CONFIDENTIAL VERSION** |
| Defendant, | |
| **CARPENTER TECHNOLOGY CORPORATION, ELECTRALLOY, A DIVISION OF G.O. CARLSON, INC., NORTH AMERICAN STAINLESS, AND VALBRUNA SLATER STAINLESS, INC.,** | **CORRECTED** |
| Defendant-Intervenors. | |

**BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Rosa S. Jeong
Hugh A. Smachlo
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
(202) 331-3100 (Phone)
(202) 331-3101 (Fax)
*Counsel for Atlas Stainless Corporation Private Limited*

July 31, 2026

NON-CONFIDENTIAL

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

STATEMENT PURSUANT TO RULE 56.2........................................................1

I.    ADMINISTRATIVE DETERMINATION UNDER REVIEW..............................1

II.   ISSUES PRESENTED FOR REVIEW ...................................................1

III.  STATEMENT OF FACTS...............................................................2

SUMMARY OF ARGUMENT.............................................................................9

ARGUMENT..................................................................................10

I.    STANDARD OF REVIEW.....................................................................10

II.   COMMERCE'S DETERMINATION TO FIND ATLAS TO BE AFFILIATED WITH HINDUSTAN AND SIEVES IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE ON THE RECORD AND IS OTHERWISE NOT IN ACCORDANCE WITH LAW........13

    A.   Legal Requirements for Finding Affiliation.................................................13

    B.   The Affiliation Criteria Are Not Met with Respect to Atlas and Hindustan/Sieves ......14

    C.   Commerce's Finding of a Familial Relationship Between the Owners of Atlas and Hindustan/Sieves is Not Supported by Substantial Evidence on the Record .................17

    D.   Commerce Erroneously Grouped Families and Companies as a Single Entity.............22

III.  COMMERCE'S DETERMINATION TO COLLAPSE ATLAS WITH HINDUSTAN AND SIEVES IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE ON THE RECORD AND IS OTHERWISE NOT IN ACCORDANCE WITH THE LAW.............26

    A.   Legal Requirements for Collapsing...................................................26

    B.   Commerce's Finding of Common Ownership Between Atlas and Hindustan/Sieves is Not Supported by Substantial Evidence on the Record.....................................27

    C.   Commerce's Finding of Common Managerial or Directors Between Atlas and Hindustan/Sieves is Not Supported by Substantial Evidence on the Record.................29

    D.   Commerce's Finding of Significant Potential for Manipulation of Price or Production is Not Supported by Substantial Evidence on the Record...............................30

IV.   COMMERCE'S DETERMINATION TO ASSIGN ATLAS A FINAL ANTIDUMPING DUTY RATE BASED ON TOTAL ADVERSE FACTS AVAILABLE IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE ON THE RECORD AND IS OTHERWISE NOT IN ACCORDANCE WITH THE LAW.............................34

    A.   Legal Requirements for Applying Adverse Facts Available.............................34

**NON-CONFIDENTIAL**

B.    Commerce's Decision to Apply Adverse Inferences is Inadequately Explained and Unsupported by Substantial Evidence on the Record..........................................................35

CONCLUSION..........................................................................................................................42

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Atar S.r.l. v. United States,*
730 F.3d 1320 (Fed. Cir. 2013) ......................................................................................12

*Atlantic Sugar, Ltd. v. United States,*
744 F.2d 1556 (Fed. Cir. 1984) ......................................................................................11

*Bonney Forge Corp. v. United States,*
560 F. Supp. 3d 1303 (Ct. Int'l Trade 2022) ..................................................................11

*Consolidated Edison Corp. v. Labor Board,*
305 U.S. 197 (1938).........................................................................................................11

*Diversified Products Corp. v. United States,*
6 CIT 155 (1983) .............................................................................................................11

*Echjay Forgings Private Ltd. v. United States,*
475 F. Supp. 3d 1350 (Ct. Int'l Trade 2020).............................................24, 27, 28, 30, 32

*F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States,*
216 F.3d 1027 (Fed. Cir. 2000) ......................................................................................35

*Ferro Union v. United States,*
23 CIT 178, 44 F. Supp. 2d 1310 (1999)...............................................................16, 36, 37

*Gerald Metals, Inc. v. United States,*
132 F.3d 716 (Fed. Cir. 1997) ........................................................................................11

*Goodluck India Ltd. v. United States,*
11 F.4th 1335 (Fed. Cir. 2021) .......................................................................................12

*Mannesmannrohren-Werke AG v. United States,*
23 CIT 826 (1999) ...........................................................................................................35

*Mid Continent Steel & Wire, Inc. v. United States,*
31 F.4th 1367 (Fed. Cir. 2022) .......................................................................................13

*Mueller Comercial de Mexico v. United States,*
753 F.3d 1227 (Fed. Cir. 2014) ......................................................................................40

*Nippon Steel Corp. v. United States,*
337 F.3d 1373 (Fed. Cir. 2003) ...........................................................................10, 11, 35, 36

*Prosperity Tieh Enter. Co. v. United States,*
   648 F. Supp. 3d 1336 (Ct. Int'l Trade 2023) .................................................................24

*Prosperity Tieh Enter. Co. v. United States,*
   965 F.3d 1320 (Fed Cir. 2020) .................................................................27

*Queen's Flowers de Colombia v. United States,*
   21 CIT 968, 981 F. Supp. 617 (1997).................................................................16, 17

*Risen Energy Co. v. United States,*
   122 F.4th 1348 (Fed. Cir. 2024) .................................................................12

*Save Domestic Oil, Inc. v. United States,*
   357 F.3d 1278 (Fed. Cir. 2004) .................................................................12

*Seah Steel Vina Corp. v. United States,*
   950 F.3d 833 (Fed. Cir. 2020) .................................................................12

*SKF USA Inc. v. United States,*
   630 F.3d 1365 (Fed. Cir. 2011) .................................................................10, 12

*Torrington Co. v. United States,*
   127 F.3d 1077 (Fed. Cir. 1997) .................................................................12, 13

*Universal Camera Corp. v. NLRB,*
   340 U.S. 474 (1951).................................................................11

*U.S. Steel Corp. v. United States,*
   36 C.I.T. 613, 844 F. Supp. 2d 1334 (2012).................................................................33

*USX Corp. v. United States,*
   655 F. Supp. 487 (Ct. Int'l Trade 1987) .................................................................11

*Yangzhou Bestpak Gifts & Crafts Co. v. United States,*
   716 F.3d 1370 (Fed. Cir. 2013) .................................................................11, 12

*Zhejiang Mach. Imp. v. United States,*
   65 F.4th 1364 (Fed. Cir. 2023) .................................................................12

**Federal Statutes**

19 U.S.C. § 1516a(a)(2).................................................................10

19 U.S.C. § 1516a(b)(1)(B).................................................................10

19 U.S.C. § 1677(33).................................................................13, 15, 17, 21

19 U.S.C. § 1677(33)(A) .................................................................22, 24

19 U.S.C. § 1677(33)(E) ................................................................................................22

19 U.S.C. § 1677(33)(F) ............................................................................................22, 24

19 U.S.C. § 1677e(a) .............................................................................................34, 36, 40

19 U.S.C. § 1677e(a)(2)(C) ...........................................................................................37

19 U.S.C. § 1677e(b) .............................................................................35, 36, 37, 38, 40

19 U.S.C. § 1677m(d) ...................................................................................................34

19 U.S.C. § 1677m(e) ...................................................................................................34

Tariff Act of 1930, Section 771(33)(A) ...................................................................23, 24

Tariff Act of 1930, Section 771(33)(F) ...................................................................18, 23

## Regulations

19 C.F.R. § 351.102(b) ..............................................................................................18, 23

19 C.F.R. § 351.102(b)(3) .............................................................................................13

19 C.F.R. § 351.401(f) ....................................................................................................7

19 C.F.R. § 351.401(f)(1) ..............................................................................................26

19 C.F.R. § 351.401(f)(2) ...........................................................................................9, 27

19 C.F.R. § 351.401(f)(2)(i)-(ii) ....................................................................................33

19 C.F.R. § 351.401(f)(2)(iii) ........................................................................................33

## Administrative Decisions

*Antidumping Duty Orders: Stainless Steel Bar from Brazil, India and Japan,*
   60 Fed. Reg. 9,661 (Dep't Commerce Feb. 21, 1995) ...........................................2

*Certain Cut-To-Length Carbon Steel Plate From Brazil: Final Results of*
   *Antidumping Duty Administrativae Review,* 63 Fed. Reg. 12,744
   (Dep't Commerce March 16, 1998) ......................................................................41

*Initiation of Antidumping and Countervailing Duty Administrative Reviews,*
   89 Fed. Reg. 24,780 (Dep't Commerce Apr. 9, 2024) ........................................2, 4

*Initiation of Antidumping Duty Investigations: Stainless Steel Bar From Brazil,*
   *India, Italy, Japan and Spain,* 59 Fed. Reg. 3,844
   (Dep't Commerce Jan. 27, 1994) ...........................................................................2

NON-CONFIDENTIAL

*Stainless Steel Bar From India: Final Results and Rescission, in Part, of Antidumping Duty Administrative Review; 2023-2024*, 91 Fed. Reg. 7,442 (Dep't Commerce Feb. 18, 2026) .................................................................................1, 9

*Stainless Steel Bar From India: Preliminary Results and Intent to Rescind, in Part, of Antidumping Duty Administrative Review; 2023-2024*, 90 Fed. Reg. 24,566 (Dep't Commerce June 11, 2025) .............................................................................6, 7

*Steel Threaded Rod From India: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part; 2012-2013,* 79 Fed. Reg. 40,714 (Dep't Commerce July 14, 2014) ......................40, 41

NON-CONFIDENTIAL

## INTRODUCTION

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade ("CIT"), U.S. Ct. Int'l Trade R. 56.2, Plaintiff Atlas Stainless Corporation Private Limited ("Atlas") respectfully submits this brief in support of Plaintiff's Rule 56.2 Motion for Judgment Upon the Agency Record.

## STATEMENT PURSUANT TO RULE 56.2

### I.    ADMINISTRATIVE DETERMINATION UNDER REVIEW

The administrative determination under review is the final results of the administrative review of the antidumping duty order on stainless steel bar from India (Case No. A-533-810) for the period February 1, 2023, through January 31, 2024, issued by the U.S. Department of Commerce ("Commerce" or the "Department"). *Stainless Steel Bar From India: Final Results and Rescission, in Part, of Antidumping Duty Administrative Review; 2023-2024*, 91 Fed. Reg. 7,442 (Dep't Commerce Feb. 18, 2026) ("Final Determination"). P.R. 9.[1] Commerce's factual and legal conclusions underlying the Contested Final Determination are set forth in the accompanying "Issues and Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review of Stainless Steel Bar from India; 2023-2024" (February 11, 2026) ("Final IDM"). P.R. 10.

### II.    ISSUES PRESENTED FOR REVIEW

1.    Whether Commerce's decision to find Atlas to be affiliated with Hindustan Inox Limited ("Hindustan") and Sieves Manufactures (India) Private Limited ("Sieves") is supported by substantial evidence on the record and is in accordance with law.

---

[1] Citations to the public record (P.R.) and confidential record (C.R.) refer to the record of the antidumping duty review.

2.    Whether Commerce's decision to "collapse" Atlas with Hindustan and Sieves–i.e., treat the companies as a single entity–is supported by substantial evidence on the record and is in accordance with law.

3.    Whether Commerce's decision to assign to Atlas a dumping duty rate based on "total adverse facts available" is supported by substantial evidence on the record and is in accordance with law.

## III.    STATEMENT OF FACTS

In 1994, the domestic stainless steel bar industry filed an antidumping duty petition alleging that stainless steel bar imported from India was being sold at less than fair value. *See Initiation of Antidumping Duty Investigations: Stainless Steel Bar From Brazil, India, Italy, Japan and Spain*, 59 Fed. Reg. 3,844 (Dep't Commerce Jan. 27, 1994). Following an investigation, Commerce issued an antidumping duty order on stainless steel bar from India. *See Antidumping Duty Orders: Stainless Steel Bar from Brazil, India and Japan*, 60 Fed. Reg. 9,661 (Dep't Commerce Feb. 21, 1995).

In response to timely filed requests for review, Commerce initiated an antidumping duty administrative review of imports of stainless steel bar from India during the period February 1, 2023, through January 31, 2024. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 89 Fed. Reg. 24,780 (Dep't Commerce Apr. 9, 2024). P.R. 201.

Among the companies covered by the administrative review, Commerce selected Atlas as one of two mandatory respondents and issued an initial antidumping duty questionnaire to Atlas. P.R. 192. On July 9, 2024, Atlas submitted timely responses to Section A of the initial questionnaire. Letter from Atlas to Sec'y Commerce, re: Administrative Review of the antidumping duty order on Stainless Steel Bar from India: Response to Section A of the

questionnaire (July 9, 2024) ("AQR"). C.R. 136-140, P.R. 162-165. On July 29, 2024, Atlas submitted timely response to Sections B, C and D of the initial questionnaire. Letter from Atlas to Sec'y Commerce, re: Administrative Review of the antidumping duty order on Stainless Steel Bar from India: Response to Section BCD of the questionnaire (July 9, 2024) ("BCDQR"). C.R. 102-116, P.R. 132-141.

In accordance with questionnaire instructions, Atlas detailed in its Section A response the ownership structure of the company and identified companies that are affiliated with Atlas. *See* AQR at A-6 through A-10 and Exhibits A-4.a through A-4.f. The companies identified by Atlas as affiliated by virtue of common ownership and that are also involved in the production and sale of stainless steel bar included: Astrabright LLP ("Astrabright"); Bahubali Steel Industries ("Bahubali"); Eurostahl Tech LLP ("Eurostahl"); Fortis Metal NA Inc. ("Fortis"); Precision Metals ("Precision"); Venus Metal Corporation ("Venus Metal"); and Venus Wire Industries Private Limited ("Venus Wire"). *See id.* at A-6 through A-10. Atlas' responses to the initial questionnaire included complete information from its affiliates Astrabright, Bahubali, Eurostahl, Precision, Venus Metal, and Venus Wire. *See* AQR at A-1; BCDQR at B-1, C-1, D-1.

Additionally, Atlas identified two other companies, Hindustan Inox Limited ("Hindustan") and Sieves Manufactures (India) Private Limited ("Sieves") (together, "Hindustan/Sieves"), which were affiliated with Venus Wire. AQR at A-11 through A-13. Specifically, Hindustan/Sieves shared one director (one of eight for Venus Wire) and the owner of Hindustan/Sieves also had an ownership interest in Venus Wire. *Id.* at A-13. Between Atlas and Hindustan/Sieves, however, there was no direct shareholder relationship nor any shared managers, officers, or employees. *Id.* at A-12 and A-13. Accordingly, Atlas explained that Hindustan/Sieves should not be deemed

affiliated with or collapsed into Atlas and requested that Atlas not be required to submit Hindustan/Sieves' sales and cost information. *Id.* at A-13.

On October 14, 2024, Commerce issued to Atlas a supplemental questionnaire that included the following question:

> On the information thus provided, affiliation exist between Atlas,
> [
>
> ] via common control
> of a family under section 771(33)(A) of Tariff Act of 1930 (as
> amended, the Act). As a result, we request that you revise your
> questionnaire responses to include answers pertaining to
> [                                    ]. Specifically, please
> have [                                    ] respond to all
> the questions in the initial questionnaire.

Letter from Commerce to Atlas, re: Antidumping Duty Administrative Review of Stainless-Steel Bar from India: Section A Supplemental Questionnaire (Oct. 21, 2024).

On November 21 and 29, 2024, Atlas submitted timely responses to the supplemental questionnaire. Letter from Atlas to Sec'y Commerce, re: Administrative Review of the antidumping duty order on Stainless Steel Bar from India: Response to Section A Supplemental of the questionnaire (Nov. 21, 2024) ("SAQR") (C.R. 82-85, P.R. 107); Letter from Atlas to Sec'y Commerce, re: Administrative Review of the antidumping duty order on Stainless Steel Bar from India: Response to Question No. 6 Section A Supplemental of the questionnaire (Nov. 21, 2024) ("SAQR Q.6") (C.R. 67, P.R. 96). Atlas noted that it had already submitted complete questionnaire responses for Astrabright, Eurostahl, Precision Metals, Venus Wire. *See* SAQR at S1-3. Atlas again requested that Commerce excuse it from submitting questionnaire responses for Hindustan/Sieves because the record showed Atlas should not be collapsed with Hindustan/Sieves and that, lacking any control or business relationship with Hindustan/Sieves, Atlas was unable to

4

obtain information from them despite extensive efforts to do so. SAQR Q.6 at 1-3 and Exhibits S1-6 through S1-10.

On November 22, 2024, Commerce issued to Atlas a supplemental questionnaire covering sections B and C of Atlas' initial questionnaire response. Letter from Commerce to Atlas, re: Antidumping Duty Administrative Review of Stainless-Steel Bar from India: B and C Supplemental Questionnaire (Nov. 22, 2024). C.R. 81, P.R. 106. Atlas submitted a timely response on December 24, 2024. Letter from Atlas to Sec'y Commerce, re: Administrative Review of the antidumping duty order on Stainless Steel Bar from India: Response to Section B & C Supplemental of the questionnaire (Dec. 24, 2024). C.R. 54-60, P.R. 70-76.

On December 6, 2024, Commerce issued to Atlas a Section D supplemental questionnaire in which Commerce again requested:

> We find, based on information on the record, affiliation may exist
> between Atlas, [
>
>
>               ]. As such, we request that you provide a complete
> Section D responses for all companies, including [
>               ]. Please respond to all questions in the initial sections D
> questionnaire, and prepare, update, and submit all data files, along
> with the required exhibits.

Letter from Commerce to Atlas, re: Administrative Review of the Antidumping Duty Order on Stainless Steel Bar from India: First Section D Supplemental Questionnaire (Dec. 6, 2024) at 1. C.R. 65, P.R. 89.

On December 16, 2024, Atlas submitted a timely response. Letter from Atlas to Sec'y Commerce, re: Administrative Review of the antidumping duty order on Stainless Steel Bar from India: Response to Section D Supplemental questionnaire (Dec. 16, 2024) ("SDQR"). C.R. 63, P.R. 81. In the response, Atlas again pointed out that it had already submitted complete responses

to Section D of the initial questionnaire for Precision Metals, Venus Wire and Eurostahl and that Astrabright did not produce the merchandise under review. *Id.* at 1. Atlas also explained that, despite exhaustive efforts, it was unable to secure information from Hindustan/Sieves. *See id.* at Exhibit SQD-1. Atlas reiterated the fact that the only relationship between Atlas and Hindustan/Sieves is the fact that both are affiliated with Venus Wire. *Id.* And despite the belief that it was not affiliated with Hindustan and Sieves, Atlas detailed the exhaustive efforts it expended to obtain the information requested by the Department. *Id.*

On January 3, 2025, Carpenter Technology Corporation, Electralloy, a Division of G.O. Carlson, Inc., North American Stainless, and Valbruna Slater Stainless, Inc. (together, "Petitioners") submitted comments on Atlas' supplemental questionnaire responses. Letter from Kelley Drye & Warren LLP to Sec'y Commerce, re: Stainless Steel Bar from India – Petitioners' Comments on the Supplemental Sections B/C and D Responses of Atlas Stainless Corporation Private Limited (Jan. 3, 2025). C.R. 50, P.R. 66. On January 14, 2025, Atlas submitted a rebuttal to Petitioners' January 3, 2025, comments. Letter from Atlas to Sec'y Commerce, re: Atlas' Rebuttal Comments (Jan. 14, 2025) ("January 14 Rebuttal Comments"). C.R. 43, P.R. 61.

On May 8, 2025, Petitioners filed pre-preliminary comments. Letter from Kelley Drye & Warren LLP to Sec'y Commerce, re: Stainless Steel Bar from India – Petitioners' Comments Concerning Atlas Stainless Corporation Private Limited and Chandan Steels Limited in Advance of the U.S. Department of Commerce's Upcoming Preliminary Results (May 8, 2025). C.R. 34, P.R. 55. On May 16, 2025, Atlas submitted a rebuttal to Petitioners' pre-preliminary comments. Letter from Atlas to Sec'y Commerce, re: Atlas' Rebuttal Comments (May 16, 2025) ("Rebuttal Pre-Preliminary Comments"). C.R. 32, P.R. 53.

6

NON-CONFIDENTIAL

On June 5, 2025, Commerce issued the preliminary results of the administrative review, which was published in the *Federal Register* on June 11, 2025. *Stainless Steel Bar From India: Preliminary Results and Intent to Rescind, in Part, of Antidumping Duty Administrative Review; 2023-2024*, 90 Fed. Reg. 24,566 (Dep't Commerce June 11, 2025) ("Preliminary Results"). P.R. 49. Commerce's factual and legal conclusions underlying the Preliminary Results are set forth in the accompanying Issues and Decision Memorandum, "Stainless Steel Bar from India: Decision Memorandum for Preliminary Results of Antidumping Duty Administrative Review; 2023-2024" (June 5, 2025) ("Preliminary IDM"). P.R. 50. Commerce's analysis concerning affiliation and collapsing are set forth in a separate memorandum. Memorandum to Alex Villanueva from Hermes Pinilla, re: Administrative Review of the Antidumping Duty Order on Stainless Steel Bar from India: Preliminary Affiliation and Collapsing Memorandum for Atlas Stainless Corporation Private Limited (June 5, 2025) ("Collapsing Memorandum"). C.R. 16, P.R. 43.

Commerce determined that Atlas, Astrabright, Bahubali, Eurostahl, Fortis Metals, Venus Metal, and "the Venus Group, a collapsed entity comprising Precision Metals, Venus Wire Industries Private Limited (Venus Wire), Hindustan Inox Limited (Hindustan), and Sieves Manufactures (India) Private Limited (Sieves) are affiliated parties within the meaning of section 771(33) of the Tariff Act of 1930, as amended (the Act)." Collapsing Memorandum at 1. Commerce further determined that Atlas, Astrabright, Bahubali Steel, Eurostahl, Precision Metals, Venus Metal, Venus Wire, Hindustan, and Sieves should be "collapsed"–i.e., treated as a single entity–pursuant to 19 C.F.R. § 351.401(f). *Id.* Furthermore, finding that Atlas had failed to cooperate to the best of its ability by not providing a complete response for Hindustan/Sieves, Commerce assigned to Atlas a 30.92 percent dumping margin based on total adverse facts available

("AFA") and completely disregarded all information submitted by Atlas on the record during the entire review. Preliminary IDM at 6-9.

On August 18, 2025, Atlas submitted a case brief, in which Atlas reiterated that there is no basis to consider Atlas to be affiliated with Hindustan/Sieves, to collapse the companies, and to apply total AFA in light of the evidence demonstrating Atlas' continued cooperation and extensive efforts to obtain the requested information. Letter from Greenberg Traurig LLP to Sec'y Commerce, re: Stainless Steel Bar from India – Case Brief (Aug. 18, 2025) ("Atlas Case Brief"). C.R. 4, P.R 20. Petitioners filed a rebuttal brief on August 25, 2025. Petitioners' Rebuttal Brief Regarding Atlas Stainless Corporation (Aug. 25, 2025). C.R. 3, P.R. 18.

On February 11, 2026, Commerce issued the final results of the review in which Commerce continued to assign to Atlas the dumping duty rate of 30.92 percent based on total AFA. P.R. 11. The final results notice was published in the Federal Register on February 18, 2026. P.R. 9. Commerce's factual and legal conclusions underlying the final results are set forth in the accompanying "Issues and Decision Memorandum." P.R. 10. Commerce's analysis of the collapsing issue containing business proprietary information is set forth in a separate memorandum. Memorandum to The File from Hermes Pinilla, re: Administrative Review of the Antidumping Duty Order on Stainless Steel Bar from India: Atlas Final Analysis Memorandum (Feb. 11, 2026) ("Final Analysis Memorandum"). C.R. 2, P.R. 8.

Commerce continued to find Atlas to be affiliated with Hindustan and Sieves and determined that Atlas and Hindustan/Sieves, along with several other companies, should be collapsed. Final IDM at 7-10. Furthermore, Commerce concluded that, by failing to provide complete questionnaire responses for Hindustan/Sieves, Atlas "withheld information requested by Commerce, failed to provide information in a timely manner, and significantly impeded this

8

proceeding. . . ." *Id.* at 13. On that basis, Commerce determined that the application of total AFA was warranted and continued to assign to Atlas a dumping duty rate of 30.92 percent, which reflected the highest margin previously assigned in a prior segment of the proceeding. Final Determination at 7,443; Preliminary IDM at 9.

## SUMMARY OF ARGUMENT

Commerce's Final Determination should be remanded because its findings that Atlas is affiliated with, and should be collapsed with, Hindustan and Sieves are unsupported by substantial evidence on the record and is otherwise not in accordance with law. The record establishes that Atlas and Hindustan/Sieves have no direct or common ownership, shared officers, managers or employees, transactions, operational integration, or ability to control one another. Their only connection is that each is separately affiliated with Venus Wire. The statute does not extend affiliation to an "affiliate of an affiliate," and Commerce could not establish affiliation from this attenuated connection by treating the separate families that own Atlas and Hindustan/Sieves as a single family unit. Commerce's conclusion rests principally on isolated errors in Atlas' exhibits to the initial questionnaire response while disregarding Atlas' repeated explanations to the contrary and the record as a whole.

Moreover, Commerce's collapsing determination is unsupported by substantial evidence on the record and otherwise not in accordance with law because the record does not show a significant potential for manipulation of price or production under 19 C.F.R. § 351.401(f)(2). Atlas and Hindustan/Sieves are not commonly owned, do not share management, and have no intertwined operations. Commerce instead relied on transactions involving other companies, the mere ability of Hindustan/Sieves to produce subject merchandise, and unsupported assumptions about a unified "Sanghvi-Bohra" family group. Those facts do not establish a significant potential

9

for manipulation of price or production.

Commerce also unlawfully assigned Atlas a 30.92 percent dumping duty rate based on total adverse facts available. Because Atlas should not have been collapsed with Hindustan/Sieves—and because Atlas and its affiliates supplied the sales and cost information necessary to calculate Atlas's margin—Commerce lacked a lawful basis to resort to facts available. Furthermore, Commerce did not make or adequately explain the additional statutory finding that Atlas failed to cooperate to the best of its ability. The record shows the opposite: Atlas timely answered Commerce's questionnaires, disclosed all relevant relationships, provided full responses for its actual affiliates, and undertook extensive efforts to obtain information from Hindustan/Sieves despite lacking control or leverage over those competing companies. The Court should therefore hold Commerce's determination unlawful and remand with instructions to calculate Atlas's margin using the information submitted by Atlas and its affiliates.

## ARGUMENT

### I.    STANDARD OF REVIEW

In an action brought under 19 U.S.C. § 1516a(a)(2), this Court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B); *see also SKF USA Inc. v. United States*, 630 F.3d 1365, 1370 (Fed. Cir. 2011) ("Commerce's determination must be sustained if it is supported by substantial evidence and otherwise in accordance with law."); *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (The Court "will uphold Commerce's determination unless it is unsupported by substantial evidence on the record, or otherwise not in accordance with law.") (internal quotations omitted). "{S}ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

10

adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quoting *Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197, 229 (1938)); *see also Nippon Steel*, 337 F.3d at 1379.

Furthermore, substantial evidence must be measured by a review of the record as a whole, "including whatever fairly detracts from the substantiality of the evidence." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984). Therefore, "it is appropriate to set aside {Commerce}'s decision when the court 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to {its} view.'" *Diversified Products Corp. v. United States*, 6 CIT 155, 161, 572 F. Supp. 883, 888 (1983) (quoting *Universal Camera*, 340 U.S. at 488).

Commerce's determination cannot be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence." *USX Corp. v. United States*, 655 F. Supp. 487, 489 (Ct. Int'l Trade 1987). The substantial evidence standard "requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (quoting *Universal Camera*, 340 U.S. at 487).

Furthermore, "{i}f Commerce fails to provide an explanation for its actions, substantial evidence cannot exist to justify the Department's action." *Bonney Forge Corp. v. United States*, 560 F. Supp. 3d 1303 (Ct. Int'l Trade 2022). "This standard requires Commerce to examine the record and articulate a satisfactory explanation for its action." *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013). "Stated differently, Commerce bears

11

the burden of demonstrating that its conclusions are of a kind that a reasonable mind might accept as adequately supported when viewing the record as a whole." *Risen Energy Co. v. United States*, 122 F.4th 1348, 1356 (Fed. Cir. 2024). "Speculation and guesswork are not substitutes for substantial evidence." *Id.* at 1356 (citing *Yangzhou Bestpak*, 716 F.3d at 1378; *Seah Steel Vina Corp. v. United States*, 950 F.3d 833, 847 (Fed. Cir. 2020)). An explanation "may be unreasonable if the agency entirely failed to consider an important aspect of the problem," and Commerce has an "obligation" to "address important factors raised by comments from petitioners and respondents." *SKF USA*, 630 F.3d at 1370.

Additionally, well-established principles of administrative law require that Commerce must adhere to its prior policies and practices, or provide a reasonable explanation for any departure. *See Zhejiang Mach. Imp. v. United States*, 65 F.4th 1364, 1372 (Fed. Cir. 2023) ("When 'Commerce has a routine practice for addressing like situations, it must either apply that practice or provide a reasonable explanation' as to why it departs from it.") (quoting *Save Domestic Oil, Inc. v. United States*, 357 F.3d 1278, 1283-84 (Fed. Cir. 2004)). Despite Commerce's statutory discretion, "Commerce abuses its discretion, for instance, if it departs from a consistent practice without reasonable explanation." *Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1342 (Fed. Cir. 2021). Actions that are unsupported by a reasoned explanation may be deemed arbitrary and capricious. *See Atar S.r.l. v. United States*, 730 F.3d 1320, 1325 (Fed. Cir. 2013) (To review the reasonableness of agency action, "courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion.") (internal quotations omitted).

Finally, in reviewing the agency's decision, "the Court will not impose its own views as to the sufficiency of the agency's investigation or question the agency's methodology." *Torrington*

12

*Co. v. United States*, 127 F.3d 1077 (Fed. Cir. 1997). However, it is "a judicial obligation to ensure that the agency has {set forth an adequate justification}, while avoiding judicial usurpation of agency authority to make pertinent factual and policy determinations." *Mid Continent Steel & Wire, Inc. v. United States,* 31 F.4th 1367, 1376 (Fed. Cir. 2022).

## II.    COMMERCE'S DETERMINATION TO FIND ATLAS TO BE AFFILIATED WITH HINDUSTAN AND SIEVES IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE ON THE RECORD AND IS OTHERWISE NOT IN ACCORDANCE WITH LAW.

### A.    Legal Requirements for Finding Affiliation

Section 771(33) of the Act, 19 U.S.C. § 1677(33), defines affiliated or affiliated persons as follows:

> (A) Members of a family, including brothers and sisters (whether by the whole or half-blood), spouse, ancestors, and lineal descendants;
> (B) Any officer or director of an organization and such organization;
> (C) Partners;
> (D) Employer and employee;
> (E) Any person directly or indirectly owning, controlling, or holding with power to vote, 5 percent or more of the outstanding voting stock or shares of any organization and such organization;
> (F) Two or more persons directly or indirectly controlling, controlled by, or under common control with, any person;
> (G) Any person who controls any other person and such other person.

19 U.S.C. § 1677(33). Furthermore, "a person shall be considered to control another person if the person is legally or operationally in a position to exercise restraint or direction over the other person." *Id.* Commerce's regulations specify that Commerce does not find that control exists on the basis of these factors "unless the relationship has the potential to impact decisions concerning the production, pricing, or cost of the subject merchandise or foreign like product." 19 C.F.R. § 351.102(b)(3).

13

NON-CONFIDENTIAL

**B.    The Affiliation Criteria Are Not Met with Respect to Atlas and Hindustan/Sieves**

As explained in Atlas' submissions, the facts regarding the relationship between Atlas and

Hindustan/Sieves are as follows:

- Atlas is owned [      ] by Gheverchand Sanghvi and his two sons Pratik Sanghvi and Bhavesh Sanghvi and [      ] owned by Hitesh Bohra, who is a member of the Babulal P. Bohra Family. AQR at Exhibit A-4.a.

- Atlas is affiliated with Venus Wire via [                    ], whereby Gheverchand Sanghvi owns a [         ] interest of Venus Wire. Other owners of Venus Wire that have 5% or more ownership are: [

  ]. *See id.* at Exhibit A-4.d and Exhibit A-5.

- 8 Bohra and members of his family own [         ] and [        ], respectively, of Hindustan and Sieves. The remaining [        ] of Hindustan is owned by [
  ]. *See id.* at Exhibit A-5.

The relationship can be illustrated graphically as follows:

14

Atlas has explained repeatedly that the above indirect relationship constitutes the *entire* connection between Atlas and Hindustan/Sieves and that, other than this tenuous connection, Atlas and Hindustan/Sieves have no other relationship. *See* AQR at A-12 to A-15 and Attachment 1; SAQR at S1-3 to S1-11; *see also* January 14 Rebuttal Comments at Annexure-1; Rebuttal Pre-Preliminary Comments at 8.

Substantial evidence on the record demonstrates that the companies do not fall under any of the definitions of 19 U.S.C. § 1677(33) establishing affiliation:

(A)    *Members of a family:* Atlas and Hindustan/Sieves, as well as their respective owners, are not members of a family. The Ghevarchand **Sanghvi** family, which owns Atlas, is **not** affiliated with or related in any way to the Ghevarchand P. **Bohra** family, which owns Hindustan and Sieves. *See id.*

(B)    *Officer or director:* Atlas and Hindustan/Sieves do not share officers or directors and neither company serves as officers or directors of each other.[2]

(C)    *Partners:* Atlas and Hindustan/Sieves, as well as their respective owners, are not partners. *See id.*

(D)    *Employer and employee:* Atlas and Hindustan/Sieves are not employed by one another and do not share employees. *See id.*

(E)    *Ownership of shares:* Atlas and Hindustan/Sieves do not own any shares of one another. *See* AQR at Exhibit A-5.

---

[2] As further discussed below in Section III.B, there was an inadvertent error in Exhibit A-6 of Atlas' AQR in the identification of [                    ]. Regardless, Atlas has repeatedly affirmed that Atlas and Hindustan/Sieves do not share any directors or managers. *See* AQR at A-12 to A-13; SAQR at S1-4 to S1-5; SAQR Q.6 at 4-5; January 14 Rebuttal Comments at 11; Rebuttal Pre-Preliminary Comments at 3.

(F)    *Common ownership:* Atlas and Hindustan/Sieves do not together control any other party and are not commonly owned, directly or indirectly, by another party. *See id.*

(G)    *Control:* Atlas and Hindustan/Sieves do not control one another. Given their lack of shared ownership or management, neither Atlas nor Hindustan/Sieves – nor their respective owners – is legally or operationally in a position to exercise restraint or direction over the other person or to impact decisions concerning the production, pricing or cost of the merchandise under consideration. *See* AQR at A-12 to A-13; SAQR at S1-4 to S1-5; SAQR Q.6 at 4-5; January 14 Rebuttal Comments at 11; Rebuttal Pre-Preliminary Comments at 3.

As noted above, Atlas' affiliate Venus Wire is [         ] owned by the [

         ]. *See* AQR at Exhibit 5. Thus, Venus Wire is affiliated with both Atlas and Hindustan/Sieves; however, that fact alone does not establish an affiliation between Atlas and Hindustan/Sieves. Section 771(33) of the Act does not confer affiliation on two companies based on having a common affiliate that is not a controlling party of the two companies. In other words, the statute does not extend the affiliation definition to "affiliates of an affiliate."

Commerce itself has confirmed this interpretation of the statute. In a public briefing by the Department regarding the affiliation standard in Section 771(33) of the Act,

> . . . Commerce presented three scenarios for affiliation. In scenario 2, A holds a 50 percent interest in B, and a 10 percent interest in C. Commerce stated that under this scenario "***A is affiliated with B and A is affiliated with C, this does not mean that B and C are affiliated.***"

*Ferro Union v. United States,* 23 CIT 178, 195, 44 F. Supp. 2d 1310, 1326-27 (1999) (emphasis added); *see also Queen's Flowers de Colombia v. United States,* 21 CIT 968, 975, 981 F. Supp.

16

617, 625 (1997) (holding that companies that are not directly related under the statutory definition could not be related by means of a string of related parties).[3]

Furthermore, there is no basis to assume that the mere fact of having a common, non-controlling affiliate conferred control, i.e., the ability to exercise restraint or direction over the other person or to impact decisions concerning the production, pricing or cost of the merchandise under consideration by Atlas over Hindustan/Sieves or vice versa. On the contrary, Atlas has repeatedly explained that Atlas and Hindustan/Sieves have no involvement in each other's businesses and have no ability to impact any decisions of each other concerning the production, pricing or cost of the merchandise under consideration. *See* AQR at A-12 to A-15; *see also* SAQR at S1-3 to S1-11; January 14 Rebuttal Comments at Annexure-1; Rebuttal Pre-Preliminary Comments at 8. In sum, Atlas is not affiliated with Hindustan or Sieves because none of the criteria under Section 771(33) of the Act are met.

C.    **Commerce's Finding of a Familial Relationship Between the Owners of Atlas and Hindustan/Sieves is Not Supported by Substantial Evidence on the Record**

In finding affiliation between Atlas and Hindustan/Sieves, Commerce reasoned:

> {W}e determined that Atlas, Hindustan and Sieves, and the other entities identified above are affiliated through members of the same family and through direct control pursuant to sections 771(33)(A) and (F) of the Act.

> Our analysis was based on information on the record provided by Atlas which substantiates our Preliminary Results that a familial relationship between the Sanghvi and Bohra families exists. In the Collapsing Memorandum, we explained that the record indicates that the Sanghvi and Bohra families can be considered members of a family through marriage. Specifically, we cited Exhibit A-5 of

---

[3] *Queen's Flowers* was adjudicated under the previous version of the statute which use the term "related" parties instead of "affiliated" parties. However, the substance of the relevant definition was the same.

Atlas' section A questionnaire response, where it states that Prakash Sanghvi is a family member of the Sanghvi family. In fact, Prakash Sanghvi is identified numerous times by Atlas in various charts submitted in Exhibit A-5 as being a family member of the Sanghvi family. Further, in Exhibit A-5, Prakash Sanghvi is also identified multiple times as the "Brother in law of Sanjay Bohra," who is a member of the Bohra family. Also, in Exhibit A-5, Atlas identified Sanjay Bohra as the son of Motilal Bohra, and Motilal Bohra is the brother of Babulal Bohra, who is the director of Venus Wires and partner in Precision Metals.

. . .

Moreover, as explained further in the Collapsing Memorandum, record evidence indicates that because, collectively, the Sanghvi and Bohra families have majority ownership over all the companies in question (i.e., Astrabright, Bahubali Steel, Eurostahl, Fortis Metals, Venus Metal, Precision Metal, Venus Wire, Hindustan, and Sieves), the Sanghvi and Bohra families are in a position to exercise restraint or direction over the entities listed above pursuant to section 771(33)(F) of the Act and 19 CFR 351.102(b).

Final IDM at 6-7.

Commerce's conclusion that there is a familial relationship between the owners of Atlas, the Sanghvi family, and the owners of Hindustan/Sieves, the Ghevarchand P. Bohra family, is not supported by substantial evidence on the record. Commerce bases its conclusion primarily on a single exhibit contained in Atlas's Section A response, Exhibit A-5. This exhibit is a table that shows any cross-ownership of Atlas and its affiliates, as well as that of Hindustan/Sieves. *See* AQR at Exhibit A-5. Excerpts of the exhibit that pertain to Atlas and Hindustan/Sieves are copied below:

NON-CONFIDENTIAL

## Atlas Stainless Corporation Private Limited

**List Showing Individual & Group Companies Cross ownership Holding as on 31st January 2024**

| Name Of Individual & Group Companies | Nature of relationship | Sr no of List of Affiliate- See Exhibit A-3---> | |
|---|---|---|---|
| | | **1** | |
| | | **Atlas Stainless Corporation Private Limited** | |
| | | **Shareholding** | |
| **Name Of Individual & Group Companies** | **Nature of relationship** | **Nos.** | **%** |
| **Companies, Subsidiary and Wholly owned subsidiary:** | | | |
| Venus Wire Industries Pvt Ltd | Wholly Owned Subsidy | | |
| Precision Metals | Wholly Owned Subsidy | | |
| Nestainox Private Limited | Wholly Owned Subsidy | | |
| **Individual Shareholding:** | | | |
| **A) Sanghvi Family --:** | | | |
| Gheverchand R. Sanghvi | Director & Shareholder of Atlas | | |
| Pratik Sanghvi | Director & Shareholder (Son of Gheverchand R. Sanghvi) | | |
| Bhavesh Sanghvi | Director & Shareholder (Son of Gheverchand R. Sanghvi) | | |
| Nikita Sanghvi | Partner (Daughter in law of Gheverchand R. Sanghvi) | | |
| Prakash C Sanghvi | Brother in law of Sanjay Bohra | | |
| **B) Babula P Bohra Family--:** | | | |
| Babulal P. Bohra | Director of Venus Wies and partner in Precision | | |
| Shantaben B. Bohra | Wife of Babulal Bohra | | |
| Babulal P. Bohra & Smt. Shantaben B. Bohra | Jointly Ownership | | |
| Haresh B. Bohra | Son of Babulal Bohra | | |
| Hitesh B.Bohra | Son of Babulal Bohra | | |
| **C) Gheverchand P. Bohra Family--: See Note-2** | | | |
| Gheverchand P. Bohra | Director of Venus Wies and Brother of Babulal Bohra | | |
| Hemant G. Bohra | Son of Gheverchand Bohra | | |
| Rajiv G. Bohra | Son of Gheverchand Bohra | | |
| Vimal G. Bohra | Son of Gheverchand Bohra | | |
| Priya V. Bohra | Wife of Vimal G. Bohra | | |
| Shobhangdevi G. Bohra | Wife of Gheverchand Bohra | | |
| **D) Motilal P. Bohra Family--:** | | | |
| Motilal P. Bohra | Director of Venus Wies and Brother of Babulal Bohra | | |
| Sanjay M. Bohra | Son of Motilal Bohra | | |
| Prakash C Sanghvi | Brother in law of Sanjay Bohra | | |
| **E) Kanwar Family--:** | | | |
| Nikunj  S Kanwar | Brother in Law of Bhavesh Sanghvi | | |
| Pushpa S Kanwar | Mother in Law of Nikunj S. Kanwar | | |
| Sajjanraj Kanwar | Father n Law of Nikunj S. Kanwar | | |
| Others Individuals | 0 | | |
| **Total** | | | |

Refer Exhibit A-4 (a)    R

19

NON-CONFIDENTIAL

**List Showing Individual & Group Compa**

| | 8 | 19 | | 20 | | 21 | |
|---|---|---|---|---|---|---|---|
| **Name Of Individual & Group Companies** | Metals LLP | **Eurostahl DOO** | | **Hindustan Inox Ltd** | | **Sieves Manufactures India Pvt. Ltd.** | |
| - | olding | Shareholding | | Shareholding | | Shareholding | |
| **Name Of Individual & Group Companies** | % | Nos. | % | Nos. | % | Nos. | % |
| **Companies, Subsidiary and Wholly owned subsi** | | | | | | | |
| Venus Wire Industries Pvt Ltd | | | | | | | |
| Precision Metals | | | | | | | |
| Nestainox Private Limited | | | | | | | |
| | | | | | | | |
| **Individual Shareholding:** | | | | | | | |
| **A) Sanghvi Family --:** | | | | | | | |
| Gheverchand R. Sanghvi | | | | | | | |
| Pratik Sanghvi | | | | | | | |
| Bhavesh Sanghvi | | | | | | | |
| Nikita Sanghvi | | | | | | | |
| Prakash C Sanghvi | | | | | | | |
| | | | | | | | |
| **B) Babula P Bohra Family--:** | | | | | | | |
| Babulal P. Bohra | | | | | | | |
| Shantaben B. Bohra | | | | | | | |
| Babulal P. Bohra & Smt. Shantaben B. Bohra | | | | | | | |
| Haresh B. Bohra | | | | | | | |
| Hitesh B.Bohra | | | | | | | |
| | | | | | | | |
| **C) Gheverchand P. Bohra Family--: See Note-2** | | | | | | | |
| Gheverchand P. Bohra | | | | | | | |
| Hemant G. Bohra | | | | | | | |
| Rajiv G. Bohra | | | | | | | |
| Vimal G. Bohra | | | | | | | |
| Priya V. Bohra | | | | | | | |
| Shobhangdevi G. Bohra | | | | | | | |
| | | | | | | | |
| **D) Motilal P. Bohra Family--:** | | | | | | | |
| Motilal P. Bohra | | | | | | | |
| Sanjay M. Bohra | | | | | | | |
| Prakash C Sanghvi | | | | | | | |
| | | | | | | | |
| **E) Kanwar Family--:** | | | | | | | |
| Nikunj S Kanwar | | | | | | | |
| Pushpa S Kanwar | | | | | | | |
| Sajjanraj Kanwar | | | | | | | |
| Others Individuals | | | | | | | |
| **Total** | | | | | | | |

20

As shown above, the table groups each family under a family heading, and identifies the names of the member, a description of the nature of the relationship, and each family member's shareholding interests in various companies. Prakash Sangvhi, who is identified as the "Brother in law to Sanjay Bohra," appears under the heading "Sangvhi Family," as well as the heading "Motilal P. Bohra" family. However, as Atlas has explained, the grouping was inadvertent and Exhibit A-5 itself does not identify any relationship between Prakash Sangvhi and the Ghevarchand Sanghvi family. *See* Atlas's Case Brief at 13 n.27.

Elsewhere in its Section A response and also in multiple subsequent submissions, Atlas stated repeatedly that there is no cross-ownership between Atlas and Hindustan/Sieves, and the only connection between the companies is the fact they have a common affiliate, Venus Wire. *See* AQR at A-12 to A-13; SAQR at S1-4 to S1-5; SAQR Q.6 at 4-5; January 14 Rebuttal Comments at 11 ("{T}he family owning 99% of Atlas doesn't have any relationship with the family owning [                    ]."); Rebuttal Pre-Preliminary Comments at 3 ("[                    ] is owned by [                    ] [      ], [                    ] [      ], [                    ] [[      ]], [      ] [                    ] [      ], [      ] [                    ] [      ], [      ] [                    ] [      ]. These personnel *are not related* to shareholders 1 to 3 of Atlas, who collectively own 99% of Atlas." ... "[      ] is owned by [                    ] [      ] [      ] [                    ] [      ]. These two individuals are not related to the shareholders 1 to 3 of Atlas, who collectively own 99% of Atlas.").[4] Against these consistent responses and statements, the incorrect placement of Prakash Sangvhi's name in Exhibit A-5 does

---

[4] [      ] of Atlas's shares is owned by [                    ], who is a [                    ] of the members of the [                    ] family that owns Hindustan and Sieves. *See* AQR at Exhibit A-5. This minimal shareholding and the extended family relationship do not confer affiliation under 19 U.S.C. § 1677(33) and Commerce did not base its affiliation finding on this relationship.

not amount to substantial evidence supporting the finding of affiliation between Atlas and Hindustan/Sieves based on a familial relationship.[5]

Moreover, Prakash Sangvhi has no ownership interest in either Atlas or Hindustan/Sieves and holds no managerial or director position with either Atlas or Hindustan/Sieves. See AQR at Exhibits 5 and 6. Prakash Sangvhi's only connection to Hindustan/Sieves is the fact that his

[

] of Hindustan/Sieves. *See id.* at Exhibit A-5. Thus, even if Commerce assumes that Prakash Sangvhi is a member of the Gheverchand Sangvhi family, this attenuated connection does not satisfy the affiliation criteria under 19 U.S.C. § 1677(33)(A), which covers immediate family members and lineal descendants, or 19 U.S.C. § 1677(33)(E), which requires ownership of at least five percent. Furthermore, such minimal connection cannot be sufficient to indicate control under 19 U.S.C. § 1677(33)(F). Accordingly, Commerce's finding of affiliation based on a familial relationship between the owners of Atlas and Hindustan/Sieves is not supported by substantial evidence on the record.

D.    **Commerce Erroneously Grouped Families and Companies as a Single Entity**

Commerce's affiliation decision also rested on a conclusion that ". . . as explained further in the Collapsing Memorandum, collectively, the Sanghvi and Bohra families have majority ownership over all the companies in question (i.e., Astrabright, Bahubali Steel, Eurostahl, Fortis

---

[5] Commerce emphasizes that ". . . Atlas identified Prakash Sanghvi as being a member of the Sanghvi family in *multiple instances* in Exhibit A-5 of Atlas AQR." Final IDM at 6 (emphasis added). In fact, Atlas did not identify Prakash Sanghvi as being a member of the Sanghvi family in "multiple instances" in Exhibit A-5. Rather, Exhibit A-5 was presented in an Excel table, which, for printing purposes, was formatted to show the left-most column on each page of the printout. Thus, each page of Exhibit A-5 shows the column with the names of the families but the incorrect identification is made in only one instance.

22

NON-CONFIDENTIAL

Metals, Venus Metal, Precision Metal, Venus Wire, Hindustan, and Sieves), the Sanghvi and Bohra families are in a position to exercise restraint or direction over the entities listed above pursuant to section 771(33)(F) of the Act and 19 CFR 351.102(b)." Final IDM at 7. In the Collapsing Memorandum referenced in the Final IDM, Commerce made the following conclusions as related to Atlas and Hindustan/Sieves:

- "The Sanghvi and Bohra families can be considered members of a family through marriage. For instance, Prakash Sanghvi is the brother-in-law of Sanjay Bohra."
- "Atlas is owned by the Sanghvi-Bohra family with [     ] percent ownership of shares."
- "The Sanghvi-Bohra family owns [     ] percent of Precision Metals. Thus, Atlas and Precision Metal are affiliated."
- "The Sanghvi-Bohra family owns [     ] percent of Precision Metals. Thus, Atlas and Precision Metal are affiliated."
- "The Sanghvi-Bohra family owns [     ] percent of Sieves. Thus, Atlas and Sieves are affiliated."
- "The Sanghvi-Bohra family owns [     ] percent of Hindustan. Thus, Atlas and Hindustan are affiliated." Collapsing Memorandum at 4.

Commerce further stated:

> We note that Atlas has argued that the Sanghvi and Bohra families are distinct and as the Sanghvi family has [                    ] in Hindustan and Sieves they are not able and should not be required to provide information regarding those companies. However, 771(33)(A) of the Act allows for family affiliation; specifically, "{m}embers of a family, including brothers and sisters (whether by whole or half blood), spouse, ancestors, and lineal descendants." As stated above, information on the record shows that there is a marriage between the Sanghvi and Bohra families. Specifically, Prakash C. Sanghvi, a member of the Sanghvi family, is the brother-in-law of Sanjay Bohra, and Sanjay Bohra is the son of Motilal Bohra, who is [                    ] and is the brother of Babulal Bohra, a [                         ]. . . . In addition, because collectively the Sanghvi and Bohra families have majority ownership over of all of the companies listed above, we preliminarily find that, the Sanghvi and Bohra families are in a position to exercise restraint or direction over the entities in question pursuant to section 771(33)(F) of the Act and 19 CFR 351.102(b). Thus, for purposes of this analysis, because the record indicates that Atlas is affiliated with Astrabright, Bahubali Steel, Eurostahl, Fortis

> Metals, Venus Metal, and with the entities of the Venus Group (i.e.,
> Precision Metal, Venus Wire, Hindustan, and Sieves) through
> members of the same family and through direct control pursuant to
> sections 771(33)(A) and (F) of the Act.

*Id.* at 4-5 (citations omitted). The above reasoning was erroneous because Commerce impermissibly grouped individuals, families and companies, and treated such groups as unified entities for purposes of analysis under 19 U.S.C. § 1677(33)(A) and (F).

Specifically, Commerce erred in finding that the "Sanghvi" family and the "Bohra" family were related and grouping all individuals with the surnames Sanghvi and Bohra into a single family entity. Such grouping was based on Commerce's assumption that there was a marriage between the families, which, as discussed above, is not supported by substantial evidence on the record.

Moreover, there is no basis to link the families beyond immediate family relationships or their shared interest in Venus Wire. Although 19 U.S.C. § 1677(33)(A) defines members of a family as affiliates, it does not mean that *all* familial relationships must support a finding of a single person under 19 U.S.C. § 1677(33)(F) for purposes of analyzing affiliation and collapsing. *See Prosperity Tieh Enter. Co. v. United States,* 648 F. Supp. 3d 1336, 1346 (Ct. Int'l Trade 2023) (upholding Commerce's conclusion that "the mere fact that there are 'familial relations' between the two entities does not in itself support a determination that the two entities constitute a single person for purposes of affiliation and collapsing"). This Court has held that, "in order to consider a family grouping to be a 'person' capable of collective control {under 19 U.S.C. § 1677(33)(F)}, Commerce must also find that family grouping to share a common interest or consist of relationships that could impact business decisions of family owned companies." *Echjay Forgings Private Ltd. v. United States,* 475 F. Supp. 3d 1350, 1368 (Ct. Int'l Trade 2020).

24

NON-CONFIDENTIAL

There is no evidence of such common interest or relationships on the record of the administrative review at issue. As illustrated above, there are four separate and distinct family groupings with the surnames Sanghvi and Bohra:

(1) **Ghevarchand Sanghvi** and three members of his immediate family (Pratik Sanghvi, Bhavesh Sanghvi and Nikita Sanghvi);

(2) **Babula P. Bohra** and three members of his immediate family (Shantaben B. Bohra, Haresh B. Bohra, and Hitesh B. Bohra);

(3) **Ghevarchand P. Bohra** and five members of his immediate family (Hemant G. Bohra, Rajiv G. Bohra, Vimal G. Bohra, Priya V. Bohra and Shobhangdevi G. Bohra); and

(4) **Motilal P. Bohra** and two members of his immediate family (Sanjay M. Bohra and Prakash C. Sangvhi). *See* AQR at Exhibit A-5.

Although Babula P. Bohra, Ghevarchand P. Bohra and Motilal P. Bohra are brothers, the three families headed by each brother do not form a cohesive family "group" with each other. Instead, the families conduct their businesses separately and do not influence one another. *See* Rebuttal Pre-Preliminary Comments at 11-12. Even if the brothers are considered affiliated with each other, it does not follow that every member of each brother's family is affiliated with each of the extended members of another brother's family.

As discussed above, Prakash Sanghvi *is **not*** a member of the Ghevarchand Sanghvi family. Thus, [                                        ] does not provide a basis to bind any members of the Ghevarchand Sanghvi family with any of the members of the three Bohra families. Even if Commerce assumes that Prakash Sanghvi is related to the Sangvhi family, that presumed connection alone does not justify treating every member of the three Bohra families and the Sangvhi family as one unified family group.

Furthermore, the families of Ghevarchand Sanghvi, Babula P. Bohra, Ghevarchand P. Bohra and Motilal P. Bohra do not share a common interest nor have relationships that could impact business decisions of family-owned companies. At most, the Ghevarchand Sanghvi family

and the Bohra families share a common interest only with respect to Venus Wire, but not with respect to Atlas or Hindustan/Sieves. Their shared interest in Venus Wire does not extend to Atlas or Hindustan/Sieves, which have separate ownership and management.

In fact, [

] *See* SAQR Q.6 at Exhibit S1-7. This development further detracts against any finding of common interest between the Ghevarchand R. Sanghvi family and the Ghevarchand P. Bohra family, or any relationships that could impact business decisions of family-owned companies. For these reasons, Commerce's decision to treat all members of the Sanghvi and the three Bohra families as affiliated or as a single entity is not supported by substantial evidence on the record.

### III. COMMERCE'S DETERMINATION TO COLLAPSE ATLAS WITH HINDUSTAN AND SIEVES IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE ON THE RECORD AND IS OTHERWISE NOT IN ACCORDANCE WITH THE LAW.

#### A. Legal Requirements for Collapsing

Pursuant to 19 C.F.R. § 351.401(f)(1), Commerce treats two or more affiliated producers as a single entity, i.e., "collapse" the entities, if the producers have production facilities for producing similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities; and there is "a significant potential for manipulation of price or production."

In determining whether a significant potential for manipulation exists, Commerce may consider the following factors:

26

(1) the level of common ownership;

(2) the extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm; and

(3) whether the operations of the affiliated firms are intertwined, such as through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers.

19 C.F.R. § 351.401(f)(2). "No one factor is dispositive, but Commerce must consider these factors in light of the totality of circumstances." *Echjay Forgings,* 475 F. Supp. 3d at 1360 (citations omitted). Although Commerce need not find all three factors under 19 C.F.R. § 351.401(f)(2) present, collapsing nevertheless requires "a significant potential for manipulation of price, not merely any potential for price manipulation." *Id.* at 1374 (citing *Prosperity Tieh Enter. Co. v. United States,* 965 F.3d 1320, 1323 (Fed Cir. 2020)) (internal quotations omitted). None of the three factors are present with respect to Atlas and Hindustan/Sieves.

B.    **Commerce's Finding of Common Ownership Between Atlas and Hindustan/Sieves is Not Supported by Substantial Evidence on the Record**

Atlas and Hindustan/Sieves are not commonly owned. Atlas is owned [      ] by Gheverchand Sanghvi and his two sons Pratik Sanghvi and Bhavesh Sanghvi and [      ] owned by Hitesh Bohra, who is a member of the Babulal P. Bohra Family. *See* AQR at Exhibit A-5.

Ghevarchand P. Bohra and members of his family own [      ] and [      ], respectively, of Hindustan and Sieves. *See id.* The remaining [      ] of Hindustan is owned by the [                    ]. *See id.* As discussed above, the fact that the owners of Atlas and the owners of Hindustan/Sieves have [          ] interests in a third company, Venus Wire, does not establish common ownership between Atlas and Hindustan/Sieves.

In the Collapsing Memorandum, the Department found that "members of the Sanghvi-Bohra family group own [      ] percent of Atlas, Bahubali Steel, Eurostahl, Hindustan, Precision

27

Metals, Sieves, Venus Metals, and Venus Wire" and concluded that "the level of common ownership by the family group weights in favor of determining that there is significant potential for manipulation of prices or production among these companies during the POR." Collapsing Memorandum at 11. As discussed above, the Sanghvi family and the three Bohra families are not related and there is no basis to treat all individuals of four different families as a unified "Sanghvi-Bohra family group." The Gheverchand Sanghvi family, which owns Atlas, and the Ghevarchand P. Bohra family, which owns Hindustan and Sieves, have no familial relationship and do not share a common interest or have relationships that could impact business decisions of family-owned companies. *See* AQR at Exhibit A-5. At most, the Gheverchand Sanghvi and Ghevarchand P. Bohra families share a common interest in Venus Wire, not in any other entity, including Atlas or Hindustan/Sieves. As also discussed above, a [

] between Gheverchand Sanghvi family and the Ghevarchand P. Bohra family further undermines any finding that they share a common interest. *See Echjay Forgings,* 475 F. Supp. 3d at 1373 (holding that Commerce erred by failing to consider in the collapsing analysis evidence concerning estrangement between family members).

Moreover, as discussed above, Commerce based its finding of affiliation on the misplacement of Prakash Sangvh's name in Exhibit A-5 under the Sangvhi family heading, despite substantial evidence on the record that detracts from this finding. *See* AQR at A-12 to A-13; SAQR at S1-4 to S1-5; SAQR Q.6 at 4-5; January 14 Rebuttal Comments at 11; Rebuttal Pre-Preliminary Comments at 3. However, even if Commerce assumes that Prakash Sangvhi is related to the Gheverchand Sanghvi family that owns Atlas, Prakash Sangvhi has no ownership interest in Hindustan/Sieves and is not a part of the Ghevarchand P. Bohra family that owns Hindustan/Sieves. Prakash Sangvhi's only connection to Hindustan/Sieves is the fact that his

[

] of Hindustan/Sieves. *See* AQR at Exhibit A-5. This attenuated connection does not constitute substantial evidence of common ownership between Atlas and Hindustan/Sieves.

Accordingly, Commerce's finding of common ownership between Atlas and Hindustan/Sieves is not supported by substantial evidence on the record.

### C.    Commerce's Finding of Common Managerial or Directors Between Atlas and Hindustan/Sieves is Not Supported by Substantial Evidence on the Record

Atlas and Hindustan/Sieves do not share any board members or managerial employees. Atlas explained that Exhibit A-6 of its AQR erroneously identified [

]. *See* Atlas Case Brief at 20. Elsewhere in AQR as well as in numerous subsequent submissions, Atlas repeatedly stated that Atlas and Hindustan/Sieves do not share any directors, officers or employees. *See* AQR at A-13; SAQR at S1-5; SAQR Q.6 at 5; January 14 Rebuttal Comments at 13; Rebuttal Pre-Preliminary Comments at 14.

Commerce disregarded Atlas's explanation of the error, stating that "Atlas bear the burden of proof to clarify the record which it has not." Final Analysis Memorandum at 3. Commerce concluded that "absence of any record evidence to the contrary, for purposes of the final results, we continue to find that the record indicates that [

]." *Id.*

Commerce's finding that there is "absence of any record evidence to the contrary" is erroneous given that the record contains multiple responses and statements made by Atlas that contradict the error in Exhibit A-6. *See* AQR at A-13; SAQR at S1-5; SAQR Q.6 at 5; January 14

Rebuttal Comments at 13; Rebuttal Pre-Preliminary Comments at 14. At a minimum, Commerce should have considered the evidence that detracted from Exhibit A-6. Having failed to do so, Commerce's decision is not supported by substantial evidence on the record.

Moreover, even if Commerce assumes there was overlap among the directors (which there was not) of Atlas and Sieves, Commerce failed to explain how such overlap creates a *significant* potential for the manipulation of price or production. *See Echjay Forgings,* 475 F. Supp. 3d at 1373 ("Commerce must state that it relied upon the shared management through a family grouping to find potential for manipulation and explain how the evidence supports this conclusion."). Because Commerce has failed to provide such explanation, its collapsing decision is not supported by substantial evidence on the record.

### D.    Commerce's Finding of Significant Potential for Manipulation of Price or Production is Not Supported by Substantial Evidence on the Record

There is no evidence of significant potential for manipulation of price or production because Atlas and Hindustan/Sieves do not have *any* intertwined operations. As Atlas stated repeatedly:

- Atlas and Hindustan/Sieves do not share sales information, facilities or employees;

- Atlas and Hindustan/Sieves are not involved in production and pricing decisions of each other; and

- Atlas and Hindustan/Sieves do not have any transactions with each other. For example, the companies do not buy or sell merchandise from one another, loan money to each other or cooperate in any manner. *See* AQR at 15; SAQR at S1-5.

In the Final Analysis Memorandum, as it did in the Collapsing Memorandum, Commerce enumerated various transactions between companies *other than* Atlas and Hindustan/Sieves and summarily concluded that there is "some level of intertwined operations" between the companies, without identifying *any* evidence specific to Atlas and Hindustan/Sieves. Final Analysis Memorandum at 4-5. Commerce explained:

30

We continue to find that the record indicates that Atlas, Astrabright, Bahubali Steel, Eurostahl, Precision Metals, Venus Metals, and Venus Wire are engaged in [

]. For instance, record evidence indicates that, Atlas, Astrabright, Bahubali Steel, Eurostahl, Venus Wire, [                                                    ], and also purchased [                                        ]. Thus, for purposes of the final results, we continue to find that the record indicates that there [

] during the POR.

Regarding Venus Wire, the record shows that several members of the Sanghvi-Bohra family were compensated for their roles and responsibilities in the company. For example, [

] was compensated by [               ]. Further, [

] are compensated as directors in Venus Wire. **In addition, we find that through the [                     ] ownership of both companies, the record does indicate that there is some level of intertwined operations between these companies, including Hindustan and Sieves.** Further, as we explained in the Collapsing Memorandum, **Precision Metals, Hindustan and Sieves are all producers of subject merchandise and can produce the subject merchandise and sell the merchandise to all of the entities affiliated with Atlas. As there is evidence of overlap in ownership and management between Atlas, Astrabright, Bahubali Steel, Eurostahl, Hindustan, Precision Metals, Sieves, Venus Metals, and Venus Wire, we continue to find that there exists significant potential for price manipulation.** Further, because some of these companies either sell or produce subject merchandise for export to the United States, for purposes of the final results, we continue to find it reasonable to conclude that there is a potential for these companies to manipulate price and/or production. As such, contrary to Atlas' contention, for purposes of the final results, we continue to find that the operations of Atlas, Astrabright, Bahubali Steel, Eurostahl, Hindustan, Precision, Sieves, Venus Metals, and Venus Wire operations are intertwined.

*Id.* (emphasis added).[6] The parts of Commerce's explanation that possibly refer to the relationship between Atlas and Hindustan/Sieves are emphasized in bold in the quoted passage above. As shown, Commerce based its finding of intertwined operations between Atlas and Hindustan/Sieves on (1) the alleged [                                                    ] of the companies; (2) Hindustan and Sieves being producers of the merchandise under consideration that could sell such merchandise to the entities affiliated with Atlas; and (3) the alleged evidence of overlap in ownership and management. These statements are not only factually inaccurate, but also do not constitute a basis for finding intertwined operations.

First, as discussed above, there is no basis to find a single "Sanghvi-Bohra" family grouping. Contrary to the Department's preliminary conclusions, the Ghevarchand Sanghvi family is not related to any of the individuals with the Bohra surname. The Gheverchand Sanghvi family, which owns Atlas, and the Ghevarchand P. Bohra family, which owns Hindustan/Sieves, have no familial relationship and do not share a common interest or consist of relationships that could impact business decisions of family-owned companies. Additionally, as also discussed above, a

[

],

which negates any possibility of intertwined operations. *See Echjay Forgings*, 475 F. Supp. 3d at 1368 (finding that Commerce's affiliation analysis to be insufficiently explained and unsupported by substantial evidence because Commerce failed to address significant record evidence such as legal separation agreements among family members).

---

[6] Commerce's explanation in the Final Analysis Memorandum is essentially identical to the explanation in the Collapsing Memorandum.

32

NON-CONFIDENTIAL

Second, Hindustan and Sieves did not sell any merchandise under consideration to Atlas or any companies affiliated with Atlas. *See, e.g.,* SAQR Q.6 at 10 and Exhibit S1-8. A mere speculation that the companies *could* sell such merchandise does not constitute evidence of intertwined operations, which pertain to transactions or interactions that actually occurred between the companies and not potential intertwined operations. *See U.S. Steel Corp. v. United States,* 36 CIT 613, 623, 844 F. Supp. 2d 1334, 1342 (2012) ("Commerce assesses the potential for future manipulations based on current evidence, such as current common ownership, current overlapping employees and directors, current intertwined business operations, and significant transactions in the recent past."). Third, as explained above, there is no overlap in ownership and management between Atlas and Hindustan/Sieves. The companies do not have any common ownership and do not have any common directors or managers.

Finally, these three factors cited by Commerce – even if they were accurate (which they are not) – relate to other factors in the Department's collapsing analysis under 19 C.F.R. § 351.401(f)(2)(i)-(ii) and do not pertain to the intertwined operations factor under 19 C.F.R. § 351.401(f)(2)(iii). Thus, the Department's finding that there are intertwined operations between Atlas and Hindustan/Sieves is wholly unsupported by substantial evidence on the record.

In sum, Commerce's conclusion that there is significant potential for the manipulation of price or production between Atlas and Hindustan/Sieves and the collapsing decision are not supported by substantial evidence on the record.

## IV. COMMERCE'S DETERMINATION TO ASSIGN ATLAS A FINAL ANTIDUMPING DUTY RATE BASED ON TOTAL ADVERSE FACTS AVAILABLE IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE ON THE RECORD AND IS OTHERWISE NOT IN ACCORDANCE WITH THE LAW

### A.    Legal Requirements for Applying Adverse Facts Available

Pursuant to 19 U.S.C. § 1677e(a), the Department may use facts available to determine a dumping margin if:

> (1) it finds that necessary information is not available on the record, or
> (2) an interested party or any other person –
>    (A) withholds information that has been requested by Commerce,
>    (B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested,
>    (C) significantly impedes an antidumping proceeding, or
>    (D) provides information which cannot be verified.

19 U.S.C. § 1677e(a).

Commerce's discretion to resort to facts available is limited by 19 U.S.C. § 1677m(d), which requires Commerce, if it finds that a response to a request for information does not comply with the request, to "promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews. . . ." Additionally, 19 U.S.C. § 1677m(e) states that:

> {Commerce} shall not decline to consider information that is submitted by an interested party and is necessary for the determination but does not meet all of the applicable requirements established by {Commerce}, if –
> (1) the information is submitted by the deadline established for its submission.
> (2) the information can be verified,
> (3) the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination,
> (4) the interested party has demonstrated that it acted to the best of its ability in providing the information and meeting the requirements established by {Commerce} with respect to the information, and

34

(5) the information can be used without undue difficulties.

Once these requirements have been met, 19 U.S.C. § 1677e(b) permits Commerce to use an adverse inference when applying facts available if it "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information." The U.S. Court of Appeals for the Federal Circuit has interpreted the "best of its ability" standard as requiring the respondent "to do the maximum it is able to do." *Nippon Steel*, 337 F.3d at 1382.

The substantial evidence standard requires that Commerce "articulate why it concluded that a party failed to act to the best of its ability, and explain why the absence of this information is of significance to the progress of this investigation." *Mannesmannrohren-Werke AG v. United States*, 23 CIT 826, 839, 77 F. Supp. 2d 1302, 1313-14 (1999) (citation omitted). To find that a party has failed to cooperate by not acting to the best of its ability, it is not sufficient for Commerce to merely recite the legal standard or repeat its need for facts available. *Id.* at 838, 77 F. Supp. 2d at 1313 (citations omitted). Although Commerce enjoys a certain level of discretion in applying facts available, it has been repeatedly cautioned that such discretion "is not unbounded." *See, e.g., F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000).

**B.    Commerce's Decision to Apply Adverse Inferences is Inadequately Explained and Unsupported by Substantial Evidence on the Record**

**1.    The Record Contains All Information Necessary to Determine an Accurate Margin**

After determining to collapse Atlas with Hindustan/Sieves, Commerce assigned a margin to Atlas based on the application of total AFA because Atlas was not able to submit questionnaire responses for Hindustan and Sieves. Final IDM at 13. As discussed above, Commerce's decision to collapse Atlas with Hindustan/Sieves is not supported by substantial evidence on the record.

Thus, there is no basis to resort to facts available since all necessary information to calculate an dumping margin for Atlas is on the record.

Moreover, even if Commerce was justified in collapsing Atlas and Hindustan/Sieves, the information submitted by Atlas contains all information necessary to determine an accurate margin for Atlas and its affiliates. Atlas has explained that Atlas and its affiliates did not purchase any merchandise under consideration from Hindustan or Sieves and all merchandise under consideration was produced by Atlas and/or its affiliates. *See, e.g.,* SAQR Q.6 at Exhibit S1-8. Thus, the record contains all information relevant to the U.S. and comparable home market sales, as well as cost data that is specific to the merchandise under consideration sold by Atlas and its affiliates. Accordingly, Commerce's application of facts available was not in accordance with 19 U.S.C. § 1677e(a) because there is no necessary information for the dumping margin calculation that is missing from the record.

### 2.    Commerce Merely Recites the Legal Standard for Using Adverse Inferences

Even if the Court were to find that the application of facts available was justified, Commerce's decision to apply adverse inferences is not supported by substantial evidence on the record and is otherwise not in accordance with law. As discussed above, 19 U.S.C. § 1677e(b) permits Commerce to use an adverse inference when applying facts available if it "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information." The "best of its ability" standard is interpreted as requiring the respondent "to do the maximum it is able to do." *Nippon Steel*, 337 F.3d at 1382. This Court has held that "mere recitation of the relevant standard is not enough for Commerce to satisfy its obligation under the statute." *Ferro Union*, 23 CIT at 199, 44 F. Supp. 2d at 1330 (citation omitted). In *Ferro Union*, the Court held that even "'{s}ignificantly impeding the review'" is only sufficient grounds to

36

warrant an application of facts available pursuant to 19 U.S.C. § 1677e(a)(2)(C)," but not adverse

inferences under 19 U.S.C. § 1677e(b). 23 CIT at 198, 44 F. Supp. 2d at 1329. The Court explained

that:

> Although these two standards, "significantly impeding" and "failing to cooperate to the best of its ability", appear quite similar, there is a statutory distinction, and only the latter leads to the application of adverse facts. Impeding the review does not have to be read negatively. A respondent could impede a review without intending to do so, for example, because it did not understand the questions asked. **The statute requires an additional finding under section 1677e(b) that a respondent could have complied, and failed to do so.**

23 CIT at 199 n.44, 44 F. Supp. 2d at 1330 n. 44 (emphasis added).

In this case, Commerce failed to make the required additional finding that Atlas failed to

cooperate by not acting to the best of its ability. Commerce's reasoning for applying AFA consists

only of the following explanation:

> As we explained in the Preliminary Results, Atlas withheld information requested by Commerce, failed to provide information in a timely manner, and significantly impeded this proceeding by not submitting a complete AD questionnaire, and supplemental questionnaire responses. For example, the following information is a sample of missing information from the record:
>
> - A complete quantity and value of sales;
> - Full company information, such as corporate structure and affiliations, organizational charts, a complete list of facilities/offices, affiliated-party relationships and transactions;
> - A complete distribution process and sales process information;
> - All home market sales to affiliated parties;
> - All accounting practices, financial statements, and charts of accounts;
> - A complete description of the merchandise sold, production process, product codes, company brochures/catalogs, and sample sales; and
> - A complete sales and cost reconciliation.
>
> In addition, as we explained in the Preliminary Results, because Hindustan and Sieves produced and sold the foreign like product in

37

the home market, the necessary information required to determine accurate dumping margins for Atlas, which Commerce requested, is missing from the record. Further, because the cost of production (COP) data is incomplete, we are unable to determine which of Atlas' home market sales were made below the COP and were not at prices which permit recovery of all costs within a reasonable period of time. As a result, we do not have a basis for determining which home market sales are appropriate to use as normal value. Accordingly, because the necessary sales and cost data is missing from the record, and this prevents Commerce from being able to calculate an accurate AD margin, we continue to find, for purposes of these final results, the application of facts available is warranted in determining the dumping margin for Atlas, pursuant to sections 776(a)(1) and (a)(2)(A)-(C) of the Act.

Final IDM at 13. Commerce's explanation merely recites its reasons for applying facts available and does not pertain to the required *additional* finding under 19 U.S.C. § 1677e(b) that Atlas could have complied, but failed to do so. In fact, Commerce does not explain at all why adverse inference is warranted. As in *Ferro Union*, this mere recitation of the standard or the need for facts available does not satisfy the legal requirement for applying adverse inferences. For these reasons, Commerce's use of adverse inferences is unsupported by substantial evidence on the record and is not in accordance with law.

### 3. Substantial Evidence on the Record Establishes that Atlas Cooperated by Acting to the Best of its Ability

Substantial evidence on the record shows that Atlas was fully cooperative and acted to the best of its ability. First, Atlas was open and transparent with information about its affiliations and voluntarily disclosed all details regarding Hindustan and Sieves, despite its belief that the companies were not affiliated.

Second, Atlas submitted complete and timely responses to *all* of the Department's questionnaires and supplemental questionnaires, with the sole exception of Hindustan/Sieves' sales and cost data, which Atlas was unable to obtain despite its extensive efforts. Atlas' responses

38

included full questionnaire responses for affiliates Astrabright, Precision Metals, Venus Wire, Venue Metal, Bahubali and Eurostahl. *See, e.g.,* BCDQR.

Third, despite the belief that it was not affiliated with Hindustan and Sieves, Atlas expended exhaustive efforts to obtain the information requested by the Department. These efforts were detailed in multiple submissions, including several sworn declarations signed by the Atlas' owners as well as Atlas' [                    ] explaining their continuous efforts:

- Atlas contacted Hindustan and Sieves via numerous emails and phone calls, as evidenced by the copies of emails, proofs of email delivery, phone logs and phone bills showing nearly daily phone calls to Hindustan and Sieves. *See* SDQR at Exhibit SQD-1; *see also* SAQR Q.6 at 2-3 and Exhibits S1-6 and S1-7.

- Mr. Ghevarchand Sanghvi made personal visits in addition to the repeated calls and emails. *See id.*

- [

    ]. SAQR

    Q.6 at Exhibit S1-6.

- Atlas offered to bear all costs related to the collection of data and assist the companies making the submissions. *See* Rebuttal Pre-Preliminary Comments at 5.

Atlas also detailed and supported the reasons why it was not able to obtain the data from Hindustan and Sieves. Specifically, Atlas explained:

- Atlas lacked the leverage to induce Hindustan and Sieves' cooperation given the absence of intertwined operations and control over the companies. Because the companies do not have business relationship with Atlas, there is no threat to cut off business ties or impact future transactions. Moreover, because there is no common control between the companies, there is no ability to exert pressure through shareholders or parent companies. *See* SAQR Q.6 at 11.

- Hindustan and Sieves are direct competitors of Atlas, as supported by [
    ]. *See id.* at Exhibit S1-9.

- [

    ] Hindustan and Sieves. *See* SAQR Q.6 at Exhibit S1-7.

39

- In light of these circumstances, Hindustan and Sieves are likely incentivized to withhold from Atlas confidential business information and would benefit from Atlas' business being adversely impacted by receiving a high dumping duty margin. And because Hindustan and Sieves have not sold to the U.S. market during the POR (and presumably have no plans to do so in the near future), a high margin assigned to Hindustan and Sieves would not affect their businesses. *See* SDQR at 2-4; SAQR Q.6 at Exhibit S1-9.

Commerce wholly disregarded the evidence of Atlas's efforts. In the Preliminary IDM, Commerce merely stated that "because we find that Atlas (now part of the Venus Group single entity) has not acted to the best of its ability to submit a complete and timely response, we find that the application of AFA is warranted. . . ." Preliminary IDM at 8. The Final IDM neither explains why an adverse inference is warranted nor addresses the "best of its ability" standard.

A finding that Atlas failed to submit a complete response pertains only to the basis for applying facts available under 19 U.S.C. § 1677e(a); it does not address the additional finding Commerce must make under 19 U.S.C. § 1677e(b), that the party has failed to cooperate by acting to the best of its ability. Commerce failed to consider the extensive effort exerted by Atlas nor explain why it found such efforts to be not indicative of Atlas' cooperation and acting to the best of its ability. *See Mueller Comercial de Mexico v. United States*, 753 F.3d 1227, 1235 (Fed. Cir. 2014) (holding that "if the cooperating entity has no control over the non-cooperating suppliers, a resulting adverse inference is potentially unfair to the cooperating party") (citation omitted).

Commerce's failure to consider Atlas's efforts to obtain the requested information is inconsistent with its normal practice. In prior cases, Commerce took into account the level of efforts exerted by the respondents in their attempt to obtain information from uncooperative affiliates. For example, in *Steel Threaded Rod from India*, Commerce declined to apply AFA despite the respondent Mangal's inability to provide data for its affiliate Corona. *Steel Threaded Rod From India: Final Determination of Sales at Less Than Fair Value and Final Affirmative*

40

*Determination of Critical Circumstances, in Part; 2012-2013,* 79 Fed. Reg. 40,714 (Dep't Commerce July 14, 2014), and accompanying Issues and Decision Memorandum at comment 1. Commerce noted that

> Mangal cooperated fully with all of the Department's requests for information, including those regarding the relationship between Mangal and Corona, making reliance on an adverse inference pursuant to section 776(b) of the Act inappropriate. As outlined above, Mangal was diligent in its attempts to gain information regarding Corona. Mangal alerted the Department to the familial relationship between itself and Corona and that it and Corona had similar product lines in its section A questionnaire response.

*Id.*

Similarly, in *Certain Cut-To-Length Carbon Steel Plate from Brazil,* Commerce found the use of AFA inappropriate because respondent attempted to obtain information from its affiliate, but the nature of the affiliation was such that compulsion was not possible. Commerce explained:

> The Department has determined that USIMINAS/COSIPA did attempt to obtain cost of production information from its affiliate, CVRD, and otherwise complied with the Department's information requests. Further, the Department has determined that, due to the nature of its affiliation with CVRD, USIMINAS/COSIPA could not compel CVRD to provide such information to the Department. Because the Department finds that USIMINAS/ COSIPA has acted to the best of its ability in attempting to obtain the CVRD cost data, however, we will not make an adverse assumption in selecting from the facts available.

*Certain Cut-To-Length Carbon Steel Plate From Brazil: Final Results of Antidumping Duty Administrative Review,* 63 Fed. Reg. 12,744, 12,751 (Dep't Commerce March 16, 1998). Commerce failed to explain the reasons for departing from its normal practice.

As detailed above, substantial evidence on the record demonstrates that Atlas acted to the best of its ability to obtain information from Hindustan and Sieves, but due to the nature of their relationship, it was unable to compel Hindustan and Sieves to provide the information.

41

NON-CONFIDENTIAL

Accordingly, Commerce's decision to resort to total AFA is unsupported by substantial evidence on the record and is not in accordance with the law.

## CONCLUSION

For these reasons, we respectfully request that this Court hold as unlawful Commerce's Final Determination and remand this proceeding to Commerce with instructions to calculate the antidumping duty rate applied to Atlas and its affiliates based on information submitted by Atlas and its affiliates and publish revised final results in conformity with the Court's decision.

Dated:  July 31, 2026                                        Respectfully submitted,


/s/ Rosa S. Jeong
Rosa S. Jeong
Hugh A. Smachlo
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, DC  20037
(202) 331-3100 (Phone)
(202) 331-3101 (Fax)

*Counsel for Atlas Stainless Corporation
Private Limited*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the attached Brief in Support of Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record, filed July 31, 2026, contains 11,877 words, including footnotes, and excluding the table of contents, table of authorities, counsel's signature block, and this certificate, according to the word count function of the word-processing system used to prepare this brief, and therefore complies with the maximum word count limitation set forth in the Court's applicable order.

Date:  July 31, 2026

Respectfully submitted,

/s/ Rosa S. Jeong
Rosa S. Jeong
Hugh A. Smachlo
GREENBERG TRAURIG LLP
2101 L Street, NW, Suite 1000
Washington, DC  20036
Telephone:  (202) 331-3100
rosa.jeong@gtlaw.com

*Counsel for Atlas Stainless Corporation Private Limited*