UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:      THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| Atlas Stainless Corporation Private Limited,<br><br>Plaintiff,<br><br>Laxcon Steels Limited, Mega Steels Private Limited, Metlax International Private Limited, Ocean Steels Private Limited, and Parvati Private Limited.<br><br>Consolidated-Plaintiffs, and<br><br>Metroll Engineering Ltd., Pvt.<br><br>Plaintiff-Intervenor<br><br>v.<br><br>United States,<br><br>Defendant,<br><br>Carpenter Technology Corporation, Electralloy, a division of G.O. Carlson, Inc., North American Stainless, and Valbruna Slater Stainless, Inc.,<br><br>Defendant-Intervenors. | Before:  Joseph A. Laroski, Jr., Judge<br><br>Court No. 26-02192 |

CONSOLIDATED PLAINTIFFS LAXCON AND PLAINTIFF-INTERVENOR METROLL
OPENING RULE 56.2 BRIEF

Peter Koenig
SBA Trade Law
Counsel to Laxcon and Metroll
1455 Pennsylvania Ave.
Washington DC 20036
July 31, 2026 (corrected August 7, 2026)      202 669 1901, peter.koenig@sbaworld.co

1

**TABLE OF CONTENTS**

 STANDARD OF REVIEW………...............................................................................................4

STATEMENT OF FACTS...................................................................................................4

ARGUMENT - THE *FINAL RESULTS* "ALL OTHER" DUMPING RATE IS NOT
SUPPORTED BY THE STATUTORILY REQUIRED SUBSTANTIAL EVIDENCE AND IS
OTHERWISE NOT IN ACCORDANCE WITH LAW.............................................,,,..........5


CONCLUSION…………..………................................................................................11

CERTICATIONS…….…..………...........................................................................................12

.

# TABLE OF AUTHORITIES

**Statutes**

19 U.S.C. § 1673d(c)(5)(A) ..................................................................................5,6
19 U.S.C. § 1673d(c)(4)(B) ..................................................................................5,6

**Cases**

*Albemarle Corp. & Subsidiaries v. U.S.*, 821 F.3d 1345 (Fed. Cir. 2016) ....................................8

*Navneet Publications (India) Ltd. v. U.S.*, 999 F.Supp.2d 1354 (CIT 2014)..................................9

*Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. U.S.*, 716 F.3d 1370 (Fed. Cir. 2013).......................8

**Agency Decisions**

*Stainless Steel from India: Final Results of Antidumping Duty Administrative Review; 20232024,*
91 Fed. Reg. 7442 (February 18, 2026) and its accompanying February 11, 2026 *Final
Issues and Decision Memorandum* (IDM)............................................................. *passim*

*Stainless Steel From India: Preliminary Results and Intent To Rescind, in Part, of Antidumping
Duty Administrative Review; 2023-2024,* 90 Fed. Reg. 24566 (June 11, 2025) and Decision
Memorandum .................................................................................................7

*Stainless Steel Bar From India: Preliminary Results of Antidumping Duty Administrative
Review; 2019-2020,* 86 Fed. Reg. 47474 (February 24, 2021), Preliminary Decision
Memorandum .......................................................................................... 9-10

*Stainless Steel Bar from India, Final Issues and Decision Memorandum* (IDM), February 11,
2026 ................................................................................................ *passim*

*Stainless Steel Bar From India: Final Results of Antidumping Duty Administrative Review;
2022–2023, 89 Fed. Reg. 73367* (September 10, 2024) ..........................................9-10

*Stainless Steel Bar from India: Final Results of Antidumping Duty Administrative Review; 2021–
2022,* 88 Fed. Reg. 62058 (September 8, 2023) .................................................9-10

**Other**

*Statement of Administrative Action*, H.R. Doc. No. 103-826, Vol. I, at 873 (1994) ......................6

Consolidated Plaintiffs Laxcon Steels Limited (and its affiliates, Ocean Steels Private Limited, Metlax International Private Limited, Parvati Private Limited, and Mega Steels Private Limited) (collectively, Laxcon) and Plaintiff-Intervenor Metroll Engineering Pvt. Ltd.  (Metroll) submit this Rule 56.2 brief on (a) the U.S. Department of Commerce *Final Results* in the antidumping duty administrative review of *Stainless Steel from India: Final Results of Antidumping Duty Administrative Review; 2023-2024,* 91 Fed. Reg. 7442 (February 18, 2026), Commerce Access Barcode (barcode) 4879848-03, PD15,[1] and (b) its accompanying February 11, 2026 *Final Issues and Decision Memorandum* (IDM) thereof, Comment 7, PD16, barcode 4879848-02.

The *Final Results'* 15.46% dumping margin for "all other" companies (Laxcon and Metroll) fails the statutory requirement to reasonably reflect their potential dumping margin.

### STANDARD OF REVIEW

This Court's review standard of Commerce antidumping decisions, such as here, is whether they are supported by substantial evidence of record or otherwise in accordance with law.  19 U.S.C. § 1516a.  If not, this Court remands the Commerce decision for a decision in accordance with law.  *Id.*

### STATEMENT OF FACTS

In this contested dumping administrative review covering the 2023-24 period of review (POR) of the antidumping order on *Stainless Steel Bar from India*, Commerce chose two mandatory respondents to answer its questionnaires and undergo any verification thereof to determine their actual dumping margins.  IDM16-17 (pages 16-17 of IDM).  The *Final Results*

---

[1] PD15 is Public Document #15 in the Public Record filed by Commerce with the Court in this matter.

(a) found that mandatory respondent Aamor Inox Limited (Aamor) was not dumping (i.e., 0% dumping); and (b) did not make a finding as to whether or not the other mandatory respondent Atlas Stainless Corporation Private Limited (Atlas) was dumping based on its actual information. IDM16-17.  Rather, the *Final Results* claim that (a) Atlas did not cooperate to fully and accurately answer Commerce questionnaires and so (b) assigned a 30.92% adverse facts available (AFA) dumping margin on Atlas, not based on Atlas' actual situation.  IDM16-17.

In stark contrast to Atlas, the *Final Results* found that the "all other" companies cooperative – i.e., no finding of non-cooperation.  Commerce assigned "all other" companies, including Laxcon and Metroll, a dumping rate of 15.46%.  15.46% is the simple average of (a) Aamor's actual dumping margin and (b) the AFA Atlas dumping margin.   IDM16-17.

We argue that the "b" part of the "all others" dumping margin is unlawful.

## ARGUMENT

**THE *FINAL RESULTS* "ALL OTHER" DUMPING MARGIN IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS OTHERWISE NOT IN ACCORDANCE WITH LAW**

Per the antidumping statute 19 U.S.C. § 1673d(c)(5)(A), (a) Commerce selects a few respondents (generally the two largest exporters) – called mandatory respondents -- to fully investigate via questionnaires and verification thereof to calculate their actual dumping margin; and then (b) the dumping margin for the other non-individually investigated exporters and producers – called the "all others" – is the average of the dumping margin found for the mandatory respondents.  However, the statute continues, the "all other" dumping rate does not include any mandatory respondent dumping margins that (a) fully rest on adverse facts available (AFA) where a mandatory respondent did not cooperate, (b) are zero or (c) de minimis.  IDM16-

5

17.  But if the dumping margins for all mandatory respondents are zero, de minimis, or fully based on AFA –i.e., the case here – then the statute states that Commerce "may use any <u>reasonable method</u> to establish the estimated all-others rate", which might include "averaging the estimated …dumping margins for" the mandatory respondents." 19 U.S.C. § 1673d(c)(5)(B) (emphasis added).  IDM16-17.  By law, the dumping margin applied to the "all others" must be "reasonably reflective of potential dumping margins for" the "all others." Congress' Statement of Administrative Action accompanying the Uruguay Round Agreements Act ("SAA"),[2]  IDM17.

The *Final Results* "all other" dumping margin here was unlawful – i.e., was not reasonable or reflective of the amount of dumping by the "all other" respondents.

The *Final Results* (IDM17-18) state that the

> very fact that the statute contemplates using data from the largest volume exporters suggests an assumption that those data can be viewed as representative of all exporters.

As an initial matter, Commerce is no longer entitled to deference that its statutory interpretation is correct.  *Loper Bright Enterprises v. Raimondo*, 603 U.S. 364 (2024). Commerce cites no support for its statutory interpretation.   This statutory procedure could just be out of administrative convenience because Commerce has limited resources to investigate respondents. The fact that the statute separately continues by stating that the "all other" dumping margin must be representative of the "all others" suggests that this *Final Results* assumption is wrong, as it renders without meaning this additional statutory requirement, which statutory interpretation violates established rules of statutory construction that all statutory wording must have meaning.

The above said, the *Final Results* (IDM17&18) continue as to the above that:

> absent evidence otherwise, Commerce can assume that Aamor and Atlas are representative of other exporters and producers subject to the review, and that assigning a simple average of the two rates assigned to Aamor and Atlas (i.e., zero percent and 30.92

---

[2] H.R. Doc. No. 103-826, Vol. I, at 873 (1994), reprinted in 1994 U.S.C.C.A.N. 3773, 4163.

percent) to the non-selected companies results in dumping margins that are reasonably reflective of the behavior during the POR.

This quote raises two issues – i.e., (a) Is a mandatory respondent company representative of the "all others" companies and (b) Is the dumping rate that Commerce assigns to a mandatory respondent company representative of the "all others" companies.  The *Final Results* wrongly conflate the two issues.  That is, the *Final Results* effectively claim, without more, that if "a" is true, then "b" is true.  That logic does not follow.

The *Final Results* accurately calculated mandatory respondent Aamor's actual dumping margin based on Aamor's own situation and found Aamor's dumping margin representative of the "all others" companies.  IDM16-17.

In contrast, the *Final Results* did not determine mandatory respondent Atlas' actual dumping margin. Whether Atlas as a company is representative of the "all other" respondents, as the *Final Results* claim, is not the issue here.  Rather, the issue is whether the AFA 30.92% dumping margin that the *Final Results* assigned to Atlas is representative of the "all other"d respondents?  It is not.

The 30.92% dumping margin is not the actual extent of dumping by Atlas.  IDM18.  The *Final Results* are not "using data from" Atlas to calculate its assigned 30.92% dumping margin, to quote the *Final Results* worded condition above to claim the Atlas results are representative of "all others".   Rather, 30.92% is the adverse dumping rate applied in the 2019-20 review of *Stainless Steel Bar from India*.  IDM17; Commerce June 5, 2025 Preliminary Decision Issues and Decision Memorandum in the 2023-24 Review at pages 7 & 9, barcode 4771123, PD56.

Further, the *Final Results* (IDM17) state that,

> In this case, we find that there is no evidence the overall market has not changed since the 2022 2023 POR such that pulling forward the rate from the previous review would overcome the preference for contemporaneity.

7

Parsing the *Final Results* triple negative quote, the *Final Results* is holding that the 20222023 POR is a different, non-comparable time period than the 2023-2024 POR here, so must only use contemporaneous 2023-2024 POR data to determine the 2023-2024 POR "all other" rate.  In this regard, the *Final Results* (IDM17) cite *Albemarle Corp. v. United States*, 821 F.3d 1345, 1356 (Fed. Cir. 2016), where the Federal Circuit states that, in calculating dumping margins, must follow the antidumping "statute's manifest preference for contemporaneity in periodic administrative reviews."  But then Commerce uses the 2019-20 30.92% rate applied to Atlas here in the calculation of the "all other" dumping margin.  See above.  Again, the *Final Results* contradicts itself and makes claims where the logic does not follow.

In *Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. U.S.,* 716 F.3d 1370, 1378 (Fed. Cir. 2013) (*Bestpak*), the Federal Circuit held that in determining the "all others" rate (also called the separate rate in China cases) that:

> the circumstances of this case renders a simple average of a de minimis and AFA Chinawide rate unreasonable as applied. Similarly, a review of the administrative record reveals a lack of substantial evidence showing that such a determination reflects economic reality.

 Here too, there is no substantial evidence that the 15.46% rate applied to the "all others" reflects their economic reality. The *Final Results* simply "assume" (and wrongly) it does.  See above.  Assumption is not substantial evidence.  As *Bestpak* emphasizes, Commerce decisions must be supported by substantial evidence.

Continuing, the Federal Circuit held in *Bestpak* (at 1379) that a single factor, untethered to the actual extent of dumping (in *Bestpak*, average unit values) is not substantial evidence supporting the "all other" dumping margin. In this contested review, Commerce did not even do that.  Rather, here, Commerce has not provided even one reason to support its use of the 30.92%

8

dumping rate to determine the "all other" companies rate, to show that it supports a reasonable reflection of "all other" dumping margins.

In this regard, the *Final Results* do note that the mandatory respondents are the largest exporters to the United States.  See above.  But , like *Bestpak*, that does not mean that they will have the same dumping margin as the "all others".

The U.S. Court of International Trade (CIT) applied *Bestpak* in *Navneet Publications (India) Ltd. v. U.S.,* 999 F.Supp.2d 1354, 1364-65 (CIT 2014).  There, the Court found that Commerce's simple average methodology to calculate the all-others rate, incorporating AFA rates assigned to the non-cooperating parties, was (a) unreasonable as applied to the cooperative "all others" companies and (b) failed to reflect economic reality because, inter alia, the consequent "all other" rate was almost four times greater than the dumping margin found in the immediately prior Commerce dumping administrative review period.

Similar to *Navneet*, here, in the last three completed reviews of *Stainless Steel Bar from India,* the dumping margins that Commerce found for a fully cooperating company were 0%, 0.4% and 0.7%, which actually was for Laxcon and Aamor.[3]  Here, the 15.46% *Final Results* dumping margin assigned to "all other" companies[4] is twenty-two (22) or more times greater than the dumping margin found in the three most recently completed previous Commerce reviews.[5]  The 30.92% rate assigned to Atlas far exceeds the *de minimis* rate found in the

---

[3] *Stainless Steel Bar From India: Final Results of Antidumping Duty Administrative Review; 2022–2023*, 89 Fed. Reg. 73367 (September 10, 2024); *Stainless Steel Bar from India: Final Results of Antidumping Duty Administrative Review; 2021–2022*, 88 Fed. Reg. 62058 (September 8, 2023).

[4] *Stainless Steel Bar From India: Preliminary Results and Intent to Rescind, in Part, of Antidumping Duty Administrative Review; 2023-2024,* 90 Fed. Reg. 24566, (June 11, 2025).

[5] *Stainless Steel Bar From India: Final Results of Antidumping Duty Administrative Review; 2022–2023*, 89 Fed. Reg. 73367 (September 10, 2024); *Stainless Steel Bar from India: Final*

*Stainless Steel Bar from India* 2022-23 POR by Commerce for the investigated cooperative mandatory respondent Aamor as in the 2023-2024 POR.[6]

The *Final Results* (IDM18) claim 24.6% and 16.48% dumping was found in the 2017-18 and 2018-19 review periods.[7] These findings are for long past POR's (five plus years ago). The *Final Results* said such were not evidence of the current POR. See above. Further, if anything, the long past 24.6% and then 16.48% dumping margins show a significant decline in dumping, which in the last three immediately prior PORs to the 2023-24 review in issue here was then only a 0.0% to 0.7% dumping margin. See above. Again, the 24.6% and 16.48% dumping margins are not reflective of the POR here. In any event, the 24.6% and 16.48% are adverse facts available dumping margins based on a non-cooperative respondent which did not provide cost information, as indicated in the *Final Results* cites thereon. IDM18. In contrast, the "all others" here are cooperative respondents.

Moreover, in an earlier review of the *Stainless Steel Bar from India* proceeding here, Commerce agreed with our arguments:[8]

> Consistent with the CAFC's decision in *Albemarle*, in this review, we preliminarily determine that a reasonable method for determining the rate for the only nonselected company, Ambica, is to pull forward the dumping margin applied to Ambica in the most recently completed administrative review. As the CAFC

---

*Results of Antidumping Duty Administrative Review; 2021–2022*, 88 Fed. Reg. 62058 (September 8, 2023).

[6] *Stainless Steel Bar From India: Preliminary Results and Intent to Rescind, in Part, of Antidumping Duty Administrative Review*; 2023-2024, 90 Fed. Reg. 24566, (June 11, 2025). (September 8, 2023); *Stainless Steel Bar From India: Final Results of Antidumping Duty Administrative Review*; 2019–2020 86 Fed. Reg. 47474 (August 25, 2021).

[7] Citing Commerce, *Stainless Steel Bar from India: Notice of Court Decision not in Harmony with the Results of the Antidumping Duty Administrative Review; Notice of Amended Final Results*, 86 FR 31281 (June 11, 2021) and *Stainless Steel Bar from India: Amended Final Results of Antidumping Duty Administrative Review, 2018-2019*, 85 FR 86532 (December 30, 2020).

recognized, the facts of this case present a 'situation in which there {is} consistency with respect to the dumping margins of the individually examined respondents throughout the reviews.' In reviews where it has been individually examined over the last ten years, Ambica has consistently received a zero percent dumping margin. Furthermore, this rate is the most accurate and current possible rate which Commerce may assign in light of the lack of data on this record. Ambica's assigned rate reflects the most recently completed administrative review based on data specific to Ambica in that review. Also, applying the AFA-based dumping margin applied to the sole mandatory respondent in the instant review, the Venus Group, would not be reasonably reflective of Ambica's actual dumping margin. Accordingly, we preliminarily assign to Ambica the dumping margin of zero percent.[8]

Since Commerce's 2021 decision quoted immediately above, the calculated dumping margins of cooperating respondents are still 0% to 0.7%. See above. Commerce doing otherwise than its above precedent in *Final Results*, without explanation, is unlawfully arbitrary and capacious.

Finally, the *Final Results* do not explain why, in citing the dumping margin results of prior Commerce administrative reviews here, the *Final Results* ignored the most recent three prior completed reviews and went to reviews five plus years prior. Doing so makes no sense. It also contradicts the *Final Results* claim (IDM18) that it considered the "recent rates calculated by Commerce in the proceeding" on *Stainless Steel Bar from India*.

Laxcon and Metroll support and adopt by reference Atlas arguments that the AFA applied to Atlas was unlawful. A fortiori, using that Atlas dumping margin in the calculation of the "all others" dumping margin is unlawful.

## **CONCLUSION**

In short, Laxcon and Metroll respectfully request that this Court (a) find the "all others" *Final Results* unlawful and (b) issue a decision consistent with the above argument.

---

[8] *See Stainless Steel Bar From India: Preliminary Results of Antidumping Duty Administrative Review; 2019-2020*, 86 Fed. Reg. 47474 (February 24, 2021), Preliminary Decision Memorandum at 8-9 (Barcode: 4090258-02).

We appreciate this Court's attention to this matter.

Respectfully submitted,

*/s/ Peter Koenig*

Peter Koenig
SBA Trade Law, Washington DC
July 31, 2026 (corrected August 7, 2026)    Counsel to Laxcon and Metroll

## CERTIFICATIONS

This opening brief, at 3032 words, complies with the Court's brief word limitations.

Counsel understands that this brief is served on all parties per the Court's web site.